104  241
104  665

## J. R. FAUST v. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

**Shipment:** DUTY OF SHIPPER IN ATTENDANCE. Mere failure of a shipper of live stock to remain on the train as required by the shipping contract does not preclude him from recovering for the loss of such live stock by the 'burning of the car in which it was carried, where his contract did not require him to ride in such car but in the caboose.

SAME: *Burden of proof.* Under such circumstances it was not the duty of the shipper to prove that the loss was not caused by his failure to remain on the train, nor by his failure to care for the property while in transit. He could recover on proof that the fire was not due to any act or negligence of his.

**Plea and Proof.** Evidence that plaintiff in an action to recover the value of horses and other property lost in transportation over defendant's road did not have time to read the shipping contract before signing it, is inadmissible under an allegation that, after the property was loaded, defendant's agent presented the contract to plaintiff, representing it to be a pass to carry him to the place of delivery and requested him to sign it.

**Appeal:** HARMLESS ERROR: *Evidence.* Admission of incompetent evidence that plaintiff in an action for loss of property during shipment did not have time to read the shipping contract before signing it, is harmless error to defendant, where the charge to the jury requires them to consider the contract as in force.

**REVIEW OF VERDICT.** In an action to recover the value of horses and other property burned on defendant's train, the evidence showed that, at a certain station where the train stopped, plaintiff, shipper, who by the contract was to accompany the stock, left the car and went to the caboose, but left it before the train started, to

return to the stock car. He was not thereafter seen on the train. After the train started the car was found to be on fire, and the stock therein was destroyed. Plaintiff claimed to have been left at the station at which the train stopped, but his testimony was uncertain and contradictory  There were not as many carcasses of horses found in the car as plaintiff claimed to have shipped, and his reputation for truth was bad. The evidence tended to show that he set the fire. *Held*, that he was not entitled to recover or hold his verdict.

*Appeal from Story District Court.*—HON. S. M. WEAVER, Judge.

SATURDAY, DECEMBER 18, 1897.

ACTION at law to recover the value of horses and other property placed in a car of the defendant for transportation over its railway, and never delivered. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*Hubbard, Dawley & Wheeler* for appellant.

*J. F. Martin* for appellee.

ROBINSON, J.—On the twenty-fourth day of January, 1894, the plaintiff placed in a box car of the defendant at Lisbon, Iowa, several horses, harness, a wagon, a buggy, and other articles, all of which were consigned to the plaintiff for delivery at Carroll. The car thus loaded was taken by the defendant, and hauled to a point a short distance west of Ames, where its contents were discovered to be on fire. Efforts were made to extinguish the fire, and to prevent damage to other cars of the train, and the burning car was hauled to Ontario, the first station west of Ames, and the fire was there extinguished, but not until the sides and roof of the car were burned, and its contents were destroyed. The plaintiff seeks to recover the value of the property which he placed in the car.

The defendant denies that the property destroyed was in its possession, denies that it was negligent in what it did concerning it, denies that it is in any manner responsible for the loss of the property, and avers that the fire which destroyed it was caused by the act of the plaintiff. In a counter-claim the defendant asks judgment for the amount alleged to have been agreed upon for hauling the property from Lisbon to Carroll. In connection with the shipment of the property, the plaintiff signed a contract which contained the following provisions: "Shipment of live stock in car loads, or less than car loads, will only be taken at the rates named herein, after this contract or agreement shall have been signed by the company's station agent and the owner or shipper, by which it is agreed and understood that such owner or shipper shall load, feed, water, and take care of such stock at his own expense and risk. * * * All persons in charge of live stock will be passed on the train with and to take care of the stock, and will be expected to ride in the caboose attached to the train." The plaintiff claims that the train containing his car left Lisbon at 3 o'clock in the afternoon of January 24, and that he rode in his car to Cedar Rapids, where he purchased a lantern; that he rode in the caboose from Cedar Rapids to Belle Plaine, where there was a change of conductors and cabooses; that there was considerable delay at Belle Plaine; that he went into a restaurant for a few minutes, and when he came out could not find his car; that he then purchased a ticket for Nevada, and took the first west-bound passenger train for that place in order to catch his car; that he reached Nevada a little before daylight, and failing to learn anything in regard to the train which contained his car, went to a hotel and waited until the next train for the west arrived; that he took that train and went on to Carroll, and there learned that his property had been destroyed as stated.

I.   The plaintiff testified that he did not read the shipping contract before he signed it, and was asked, "Why didn't you?"  An objection by the defendant was overruled, and the plaintiff was permitted to answer:  "Why, the freight was right there, and the agent says, 'Now, you want to get right on, or you will have to wait until night.'  I was not quite ready for it yet.  I left a coat down to the hotel, and a lantern I bought at Lisbon I did not get.  I wanted to go after it, but could not do it, and a man said, 'You are a fool to have that agent run you out of town before you are ready.'  I did not have time to read it before the freight started."  A motion of the defendant to strike out the answer as immaterial and irrelevant was overruled, and the defendant complains of the ruling which permitted the jury to consider that evidence.  We do not think it was material to any issue presented by the pleadings.  In an amendment to his petition the plaintiff alleged that, after the property was loaded, the agent of the defendant presented to him the contract, and represented it to be a pass to carry him to Carroll, and requested him to sign it, and that he understood that it was a pass; that it seeks to change the liability of the defendant in regard to receiving, transporting, and delivering the property, and to excuse the defendant for negligence, and is void and of no effect; and that the only purpose for which it was given was to pass the plaintiff as a passenger in the caboose of the train. There is no controversy over the fact that the contract included a pass, and the testimony in question did not tend to support any statement contained in the petition in regard to the contract, excepting that it was intended to pass the plaintiff as a passenger, and should not have

been admitted.  See *Mulligan v. Railway Co.*, 36 Iowa, 188; *Wilde v. Transportation Co.*, 47 Iowa, 274. But we think that the evidence could not have been prejudicial, for the reason that the charge to the jury treated the contract as in force, and required the jury to so consider it.

II.  The defendant asked the court to instruct the jury that "the burden is upon the plaintiff to show, by a preponderance of the testimony, that his loss did not occur by reason of his acknowledged failure to remain upon the train with his stock and care for it.  If he has failed to show you by such preponderance that the loss was not occasioned by such failure upon his part, then he cannot recover in this action."  The defendant also asked the court to instruct the jury that the burden was on the plaintiff to show that his loss did not occur by reason of any failure on his part to carry out his agreement to take care of the horses while in transit, and that the mere fact that he remained at Belle Plaine when his car went west, whether left accidentally or by reason of his own negligence, would not excuse him from his contract to accompany the stock, or notify the proper officers of the defendant that he had been left, and could not care for the stock.  The court refused to so instruct, and charged the jury that, to entitle the plaintiff to recover, he must establish by a preponderance of the evidence that the fire which destroyed his property was not occasioned by any act of negligence on his part, and that, if he established that fact, he was entitled to recover for the property which he delivered to the defendant.  It is said in 4 Elliott, Railroads, section 1549, that, "where the owner accompanies the stock under a special contract to care for them himself, he may well be presumed to be as well acquainted with the facts in regard to their loss or injury as the carrier, and as they may have been injured because of his own negligence, or because of

their inherent nature and propensities, and not by the negligence of the carrier, it is but just to require him to show the facts. The rule in such cases, therefore, is that the burden of proof is upon the plaintiff to show that a breach of duty upon the part of the carrier caused the injury or loss, and, if the carrier is liable only for negligence, the burden is upon the plaintiff to show such negligence." See, also, *Railroad Co. v. Sherwood*, 132 Ind. 129 (31 N. E. Rep. 781). But we do not think this case is within the rule of the authorities cited. Of course, the plaintiff should be held to the performance of his part of the agreement, but there was nothing in the circumstances or character of the loss shown to justify the conclusion that it resulted from the absence of the plaintiff. His contract did not require him to ride in his car, but in the caboose, and, had he been in the latter, he could not have prevented the fire if it was not caused by his agency. Therefore, if he showed, as the charge required him to do, that the fire was not occasioned by any act or negligence on his part, he was entitled to recover. We do not find that the court erred with respect to instructions refused or the charge given.

III. The appellant contends that the verdict and judgment are not sustained by the evidence. There is much in the record to sustain the claim thus made. The testimony of the plaintiff is in some respects unreasonable, and in conflict with facts which must be regarded as established. He states that the train which contained his car reached Belle Plaine about midnight; that he then went to his car and remained in it probably half an hour or longer; that there were three bales of hay in the middle of the car, only one of which had been opened; that he found everything in it in good order, and when he left extinguished the light in his lantern, placed it on the seat of the buggy, closed the car door, and probably fastened it, although he says he is not sure as to that, and then went

into a restaurant for warmth and something to eat; that he remained in the restaurant probably "twenty minutes, or so;" that there were several trains in the yard, and switching being done; that he went to the place where he had left his car, but could not find it; that he made inquiries, but could not learn anything of it; that he finally went to the ticket office, purchased a ticket for Nevada, and remained at the station, most of the time in the waiting room, for three-quarters of an hour, or an hour, when a passenger train from the east arrived; that he entered one of the cars before daylight, and went to Nevada to catch his car; that when he arrived at that place he did not enter the depot, although he inquired for the train his car was in, but did not learn anything of it; that he went to a hotel, remained there an hour or two, without registering, procured something to eat in a candy store, and went to the depot about 9 o'clock; that he asked for a ticket for Carroll, but was given one for Glidden; that he took the train for Carroll, but was obliged to pay twenty-two cents fare from Glidden.  He introduced in evidence a railway ticket from Belle Plaine to Nevada, which he states he purchased in the former place, before leaving it on the morning of January 25, but which he says the conductor failed to take up.  The evidence on the part of the defendant shows the following:  The freight train which contained the car of the plaintiff was known as "No. 31," and left Belle Plaine for the west at twenty-seven minutes after 12 o'clock midnight.  It contained seventeen loaded and empty cars, and the car of the plaintiff was the second one from the caboose.  During the night three cars were set out, one at Tama, one at Nevada, and one at Ames.  A brakeman of the train states that a few minutes before the train left Belle Plaine the plaintiff came into the caboose, warmed himself, stated that he was with the car in question, and asked how soon the train would leave; that he was told that it

would leave soon, and he then prepared to go out; that in response to a question, he said he was going to his car; that he was told he had better remain in the caboose on account of the cold, but that he took his lantern and went out through the forward door, as though he were going to his car; and that he was not in the caboose again. The train stopped for coal and water at Lamoille, about twenty-two miles east of Nevada, and while there the conductor saw a light in the plaintiff's car. At Nevada a light was seen in the car by the conductor, a brakeman, and the fireman. The train arrived at Ames a few minutes after 5 o'clock, and remained there a little more than half an hour. It does not appear that any light was seen in the car at that place. Although the conductor passed the car while there, he did not notice anything unusual about it. Just after the train commenced to move from Ames, smoke was noticed by men in the caboose, and within a minute or two a fire was discovered in the car in question. The train was stopped, and the trainmen went to the car and looked for the plaintiff, thinking he might be in it. The south door of the car was found open far enough to permit a man to pass through the opening. Not finding the plaintiff in the car, one of the trainmen looked along the track for him, thinking he might have jumped from the car. An investigation of the car, after the fire was extinguished, showed that the fire had not originated below the car, as from a hot box, but inside. No bales of hay were found, although it is shown to be difficult to burn baled hay, and that it burns slowly. Wire used for baling was found scattered about, but not together, as though around bales which had been burned. The bodies of but three horses were found, although four were billed, and recovery for four is sought. The first passenger train which went west from Belle Plaine after midnight, January 25, was No. 5, which left at 3:23 o'clock A. M., and did not stop at Nevada, and reached Ames at 5:40

o'clock A. M., leaving three minutes later, and seven minutes before No. 31 left. No ticket for Nevada was sold at Belle Plaine before No. 5 left. A man who rode in the waycar with the plaintiff, just before reaching Belle Plaine, waited at the depot until the next passenger train for the west left and went out on it, going in the car, which the plaintiff says he was in, but did not see him at the depot nor in the car. The ticket offered in evidence was so mutilated that all means of ascertaining from it the date on which it was issued were destroyed. There are other circumstances which tend to contradict the claim of the plaintiff that he did not leave Belle Blaine on No. 31. Four witnesses testified that they knew the reputation of the plaintiff for truth and veracity in the neighborhood where he had lived, and that it was bad, and they testified to the same effect in regard to his moral character. No attempt was made to rebut that evidence. After a very careful examination of the entire record in this case, we reach the conclusion that it is so clearly established by the evidence that the statements of the plaintiff with respect to his leaving Belle Plaine, and his arrival at Nevada, are untrue, and that he was responsible for the fire which destroyed his property, that the district court court should have set aside the verdict. For it its failure to do so the judgment rendered is REVERSED.