AARON BURGHER, JR., Appellant, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

**Carriers:** CONTRACTS. A shipping contract by which the shipper agrees, in consideration of the advantage of the lower of two rates of shipment that the stock is to be loaded and unloaded and fed by the shipper or his agent, and that the company shall not be liable for any injury in loading or unloading by delay of trains except those occurring by gross negligence, is valid under Kansas act, March 6, 1883, section 13, providing that no railway company shall be permitted, except as otherwise provided by regulation or order of the board of railway commissioners created by such act, to change or limit its common law liability as common carriers and under an order by such board providing that where any railway company has two rates for the shipment of freight, the lower rate is to apply when the common law liability is limited, it shall be lawful for such company to change or limit its common law liability in such manner as may be specified by the terms of the contract, providing that it shall not be relieved from any liability on account of the negligence of the company.

DAMAGES. An owner of live stock, who undertakes to oversee the transportation of such stock, and to attend to loading, unloading, feeding and watering it, cannot recover for any injury occasioned by his own fault, even though the contract does not relieve the company from liability.

Agency: AUTHORITY OF AGENT. Evidence that the agent at the railroad station informed the shipper of the rates made by the general freight agent between two other stations, and told him his understanding of the time and connection of trains between those stations, is not sufficient to establish the authority of that agent to contract for the shipping of freight between those stations.

Evidence: PAROL VARIANCE. Evidence as to oral communications by a station agent to a shipper of cattle, prior to the execution of a written contract for their shipment, is inadmissible in the absence of fraud or mistake.

*Appeal from Davis District Court.*—HON. F. W. EICHELBERGER, Judge.

## WEDNESDAY, MAY 11, 1898.

ACTION in equity to reform a contract for the shipment of cattle, and to recover damages for an alleged breach thereof. Decree was rendered reforming the contract in one of the particulars prayed, and judgment entered dismissing plaintiff's petition. Plaintiff appeals.—*Affirmed.*

*Payne & Sowers* for appellant.

*Carroll Wright* and *S. S. Carruthers* for appellee.

GIVEN, J.—I. The pleadings and proofs are somewhat lengthy, and need not be set out in full. The following is a sufficient statement thereof for an understanding of the issues to be considered: Agra, Kan., Ellis, Neb., and Centerville, Iowa, are stations on defendant's railway. Some days prior to September 9, 1895, the plaintiff, contemplating the shipment of one car load of cattle from Agra and one

from Ellis to Centerville, called upon the defendant's station agent at Ellis for terms upon which the cattle would be shipped over the defendant's road. There being another line over which defendant could ship, he evidently desired to avail himself of the competition and to secure the most favorable terms. The defendant had in force two rates for the shipment of this class of freight, the higher rate to apply where no limitation of the strict common-law liability of the carrier was made, and the lower rate to apply when such liability was limited. Said agent at Ellis communicated by wire with defendant's general freight agent as to the rates that would be allowed to plaintiff from Ellis and from Agra, and informed the plaintiff of the answer. On the morning of September 9, 1895, the car load of cattle at Agra was loaded and shipped, one Ed Burgher being carried on the train on a shipper's pass as the person having charge of the cattle. On the evening of the same day the cattle at Ellis were loaded and carried hence in a fast freight train, the plaintiff being on the train and in charge of said cattle. The car load of cattle from Ellis arrived at Centerville on time and in good order, but the car load from Agra did not arrive at Centerville until about five o'clock P. M., September 11th. These cattle from Agra were not fed or watered, or the milch cows milked, while on the road, in consequence of which they were materially depreciated in value, and it is for this depreciation that plaintiff seeks to recover damages.

II. Plaintiff alleged and introduced evidence tending to show that he had entered into an oral contract with the defendant's agent at Ellis for the shipment of both cars of cattle; that it was agreed that the car from Agra would be shipped so as to reach Ellis on the evening of the ninth, in time to be taken into the fast freight train in which the car from Ellis was carried, so that

plaintiff could accompany both cars, and so that they would arrive at Centerville on the time of that train, without the necessity of feeding, watering, or milking on the way. The defendant denies that its agent at Ellis had authority to, or did, make and contract for the shipment of the cattle from Agra, and denies that he had authority to, or did, make any other contract for the shipment from Ellis than the one made in writing. It appears that on the ninth of September, and before the shipment of the cattle from Ellis, the plaintiff, as owner and shipper, and the defendant, by its station agent at Ellis, executed a written contract for the shipment from Ellis. It also appears that, before the shipment of the cattle from Agra, Ed Burgher and the defendant, by its station agent at Agra, executed a like written contract for the shipment of the cattle from Agra. Appellant contends that Ed Burgher had no authority to execute said last-named contract, and prays that the same be reformed by inserting the plaintiff's name as the owner and the shipper of the cattle. The district court so reformed said contract, and of this the defendant does not complain. This reformation is manifestly correct. Therefore, that contract will be considered as if the name of the plaintiff appeared therein as owner and shipper. We are in no doubt, from all the circumstances, especially from the correspondence by wire that passed between plaintiff and Ed. Burgher on the eighth and ninth of September, that Ed Burgher was authorized to represent the plaintiff in paying for and shipping the cattle from Agra, and that instead of executing the shipping contract in his own name he should have executed it for and in the name of the plaintiff. It is not claimed that any oral contract was made after the execution of these written contracts, and it is clear that whatever was said beween the plaintiff and the agent at Ellis as to the

terms of the shipments was said prior to the execution of the written contracts. Therefore the district court properly held that in the absence of fraud or mistake, evidence as to said oral communications was inadmissible. We may say, further, that, even if said declarations were competent, we think they fail to show authority in the agent at Ellis to contract for the shipment from Agra, or that he did so contract. All that he did was to inform the plaintiff of the rates given by the general freight agent, which were the rates at which the shipments were made; also to inform him of his understanding as to the time and connection of trains.

III.   With respect to the authority of Ed Burgher, it appears that the plaintiff was not at Agra, and had no personal communications with the defendant's agent at that station in regard to the shipment.   The cattle were brought in and loaded by a Mr. Fauts, for the plaintiff.   Ed Burgher, twenty years of age, a nephew of the plaintiff, who resided with the plaintiff in Iowa, was at Agra, on a visit, and with plaintiff's permission was to return to Iowa with the cattle on a shipper's pass.   There seems to have been some delay in the receipt of the money with which the Agra cattle were to be paid for, and on September 8th and 9th telegrams passed between Ed Burgher, at Agra, and the plaintiff, at Ellis, as follows:   On the eighth Ed Burgher wired plaintiff:   "Money has not come."   Plaintiff answered: "Tell one man to stay with cattle.   Pay his expenses. If money not there morning, I will be there to-morrow." Ed Burgher answered:   "Money has not come.   Cattle here."   Plaintiff replied:   "Money was expressed yesterday from Beatrice.   If not satisfied, answer."   On the ninth Ed Burgher answered:   "Cattle paid for. Will come on 96 this morning."   These messages were transmitted and received by the defendant's agents at

Agra and Ellis. Plaintiff must have known that the cattle were not to be shipped from Agra until a contract was signed, and that the agent at Agra would understand from said messages that Ed Burgher was acting for the owner. There is no claim that the agent at Agra, who alone could contract for the shipment from that point, did make any other contract than that expressed in the writing. The plaintiff asks that said written contract be reformed so as to express the agreement as alleged to have been orally made with the agent at Ellis, but, in view of the conclusion already announced with respect to that alleged contract, such reformation cannot be granted. We are clearly of the opinion that the rights of the parties as to the damages claimed must be measured by the written contract under which the shipment from Agra was made, reformed only by inserting the name of the plaintiff as owner and shipper of the cattle.

IV. We now inquire whether, under the written contract as thus reformed, the defendant is liable for the damages caused to the cattle shipped from Agra because of their not having been fed, watered, and milked while in transit. Said contract provides: "That, for and in consideration of rates named and privileges above enumerated, the said Aron Burgher, Jr., agrees to ship one car of cattle (29 head, more or less) from Agra, Kas., to Centerville, Iowa, and said railway company agrees to receive and haul the same." Immediately following this, said contract provides as follows: "Which stock is to be loaded and unloaded, watered, and fed by the said Ed Burgher (Aron Burgher, Jr.), or his agent. And in consideration of free transportation for one person, hereby given by said railway company, such person to accompany the stock, it is agreed that the car containing the stock of said Burgher is in sole charge of said person or his

agents, for the purpose of attention and protection of stock while in transit, and the company assumes no responsibility for safety to stock in charge of shipper or his agents, whether from theft, heat, jumping from car, injury in loading or unloading, injury or damage which stock may do to themselves, or which may arise from the reasonable delay of trains, or from any other cause, or accident or injury, except those occurring by gross negligence of the company." The rate named was the lower rate allowed when liability was limited. There is no provision in the contract as to the train or routes by, or the time in which, the cattle should be carried. It is undisputed that, if that part of the contract quoted above is to control, the defendant is not liable for the damage caused to the cattle for want of feed, water, and milking. Plaintiff contends that that part of said contract is in violation of the constitution of the state of Nebraska and the statutes of Kansas, and is therefore invalid. As we find that the only contract made for the shipment of the cattle from Agra was made in Kansas, we need not inquire as to the provisions of the constitution of Nebraska. The statute of Kansas and the order of its board of railway commissioners are admitted to be correctly set out in the answer. Section 13 of the act approved March 6, 1883, creating the board of railroad commissioners, is as follows: "No railroad company shall be permitted, except as otherwise provided by regulation or order of the board, to change or limit its common-law liability as a common carrier." On September 1, 1893, said board of railroad commissioners, under authority of said section, promulgated an order providing as follows: "That hereafter where any railroad company doing business in the state of Kansas shall have in force two rates for the shipment of any class of freight within said state, the higher rate to apply to such shipments where no limitation of the

strict common-law liability of said railroad company is made, and the lower rate to apply when such liability is limited, it shall be lawful for such railway company, by contract entered into between such company and any shipper, to change or limit its common-law liability in such manner and to such extent as may be specified by the terms of said contract: provided, that such contract shall not relieve such railroad company from any liability on account of the negligence of such company." · As already stated, defendant had in force two rates, and this shipment was made at the lower rate, and is therefore within the authority given in this order. Appellant quotes a statute of Kansas providing that railroads shall be liable for all damage to person or property, when done in consequence of any neglect on the part of the railroad companies. Surely, railroad companies are liable for neglect, but the inquiry here is whether this contract is valid, and, if so, whether under it it was the duty of the defendant or of the person in charge of the cattle to feed, water, and milk them. Appellant refers to section 4032 of the Code of 1873, which makes it a misdemeanor for any railway company, owner, or custodian of animals to confine the same in cars for a longer period than twenty-eight consecutive hours without unloading for rest, water and feeding, "unless delayed by storm or other accidental cause." Clearly, the carrier is not liable in damages to the owner, where the neglect is that of the owner or custodian. This contention is fully answered in the recent case of *Grieve v. Railroad Co.*, 104 Iowa, 659. Section 2074 of our Code is as follows: "No contract, receipt, rule or regulation shall exempt any railroad corporation engaged in transporting persons or property, from the liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made

or entered into." The contract in that case was identical with this as to the care of the cattle in transit. In that case it is said: "But the company had the right to employ the plaintiff by furnishing him transportation to accompany the stock, load and unload, water, and feed it; and if he actually undertook to do this, and injury was occasioned by his negligence, it is not perceived on what theory the carrier may be held responsible. In such a case damages resulted, not from any lack of care on the part of the carrier, but from that of the owner. * * * Now, if the owner undertakes to oversee the transportation of his stock and to attend to loading and unloading it, feeding and watering it, whether by contract or voluntarily, and it suffers injury through his fault, he cannot recover, though the contract in no way relieves the company from liability."

V.  Accepting the written contract as controlling, we now inquire whether the defendant is liable for the damage caused to the cattle by reason of their not having been fed, watered, and milked while in transit. Ed Burgher was authorized by the plaintiff to be and was carried on the train with these cattle on a shipper's pass, and as the person in whose sole charge the cattle were, "for the purpose of attention and protection of the stock while in transit." The cattle were unloaded and kept in a stockyard all of the first night out, but were not fed, watered, or milked. It does not appear that Ed Burgher at any time asked that the cattle be fed, watered, or milked. The fact is that plaintiff, expecting that car to be in the same train with the car which he accompanied, did not furnish Ed Burgher with money to buy feed, and Ed Burgher did not ask the defendant's agents to furnish the feed, and charge it on the waybill, as he might have done. It is entirely clear that under the contract the duty of caring for the cattle in these respects was upon the

plaintiff, and not upon the defendant. No doubt, if the Agra cattle had arrived in time to be carried from Ellis in the same train with the Ellis cattle, this damage would not have resulted; but the defendant did not contract that the Agra cattle should be so carried, and it was plaintiff's neglect that he did not provide for their care in the event of their being carried by a different train or over a different route. After a most careful consideration of the case, we reach the conclusion that the judgment of the district court should be AFFIRMED.