## GUSTAVE LEWIS v. PENNSYLVANIA RAILROAD COMPANY.

Submitted June 18, 1903—Decided November 9, 1903.

1. A carrier of live stock is not liable for injuries caused by the natural propensities of the animals.
2. Where the injuries are such that they are as likely to have been caused by the nature of the animals as by the negligence of the carrier, the court cannot assume, in the absence of evidence, that the injuries were due to the latter cause.
3. A delay of twelve hours in transportation of live stock, caused by the necessity of holding the cattle on account of the sickness and death of one, does not constitute negligence, where the remaining cattle are sent forward by the next train.
4. A contract between a carrier of live stock and a shipper that the shipper shall take care of, feed and water the stock, whether delayed in transit or otherwise, is valid.
5. For injury to live stock transported under such a contract, arising from failure to feed and water them, the carrier is not liable.

On appeal from the First District Court of the city of Newark.

Before Justices GARRISON, GARRETSON and SWAYZE.

For the plaintiff, *Guild, Lum & Tamblyn.*

For the defendant and appellant, *Vredenburgh, Wall & Van Winkle.*

The opinion of the court was delivered by

SWAYZE, J.   The plaintiff, a dealer in live stock, shipped from Prospect, Ohio, to Newark, New Jersey, a carload of twenty-one cows and three calves, under a written contract made with the Hocking Valley Railway Company. The contract stated that the cattle had been received by the Hocking Valley Railway Company for itself, and on behalf of connecting carriers, for transportation, upon certain terms and

NOVEMBER TERM, 1903. 133

*41 Vroom.* Lewis v. Penna. R. R. Co.

conditions. These terms and conditions, as far as material to the case, were as follows:

"That the said shipper is, at his own sole risk and expense, to load and take care of, and to feed and water said stock, whilst being transported, whether delayed in transit or otherwise, and to unload the same; and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto except in the actual transportation of the same."

The cattle were unloaded, watered and fed at the East Liberty stockyards, near Pittsburg, Pennsylvania, and reloaded, when the plaintiff's agent, who accompanied the train from Prospect, Ohio, left the train. The train started east from Pittsburg, September 21st, 1902, at 11:21 A. M., and reached Altoona about 6 P. M. At that point it was noticed by the employes of the defendant that one of the cows was down in the car giving birth to a calf. They had the car taken from the train, unloaded and the cow attended by a veterinary. The car was reloaded at 5:50 the next morning, with the exception of the cow already mentioned, and was attached to a train at 7:55 A M. The train arrived at Waverly at 9 A. M., September 23d, and the car was ready for the delivery of the cattle between ten and eleven o'clock. The cattle seemed to be in good condition between Altoona and Newark, but at the time they were delivered to plaintiff one calf was dead, one had a broken leg and one cow was in such condition that it had to be hauled to the plaintiff's place of business, and there died. Many of the cows were in bad condition, so as not to be salable as milch cows. The cattle had no food or water for nearly forty-eight hours. There was a train by which these cattle might have been shipped, which left Altoona before the train which actually took the car, but the cow was still ill (it died subsequently), and this train was not a regular cattle train and was known as a slow freight train.

The District Court judge gave judgment for the plaintiff.

The case fails to show the cause to which the bad condition

134    NEW JERSEY SUPREME COURT.

Lewis v. Penna. R. R. Co.    70 N. J. L.

of the cattle on their arrival in Newark was due. There is nothing in the agreed facts to show whether damages were allowed for the dead calf or the calf with the broken leg, but as there is an explicit statement that no recovery was allowed for the cow and calf which died at Altoona, the natural inference is that the damages for these two calves, dead and injured at Newark, must have been included in the judgment; if they were not so included, the state of the case would have included them in the exception with the cow and calf which died at Altoona.

The injuries to these calves are as likely to have been caused by the peculiar nature and propensities of the animals as by any other cause, and if so caused the carrier would not be liable. *Evans* v. *Fitchburg Railroad Co.,* 111 *Mass.* 142; *Clarke* v. *Rochester, &c., Railroad Co.,* 14 *N. Y.* 570; *Penn* v. *Buffalo, &c., Railroad Co.,* 49 *Id.* 204; *Mynard* v. *Syracuse, &c., Railroad Co.,* 71 *Id.* 180; *Coupland* v. *Housatonic Railroad Co.,* 61 *Conn.* 531; 23 *Atl. Rep.* 870.

In the absence of proof as to the cause of death or of the broken leg, we cannot assume that these injuries were due to the fault of the carrier rather than to the natural propensities of the animals. *Pennsylvania Railroad Co.* v. *Raiordon,* 119 *Pa. St.* 577; 13 *Atl. Rep.* 324; *Terre Haute and L. R. R. Co.* v. *Sherwood,* 132 *Ind.* 129; 31 *N. E. Rep.* 781.

If the judgment included damages for the two calves, error was committed unless there was proof that the injuries were due to the carrier's negligence, which does not appear in the state of the case.

We may, however, assume, in favor of the judgment below, that, as stated in counsel's brief, the judgment did not include an allowance of damages for these calves, and included only damages to the cattle arising out of the delay at Altoona, or out of the failure to feed and water.

The state of the case does not show that the District Court found it was negligent to hold the car twelve hours at Altoona. The car was held because one of the cows was giving birth to a calf and required attention. Delay, under such circum-

stances, seems to us an act of prudence, not of negligence. The case does not show any reason for holding that it was negligent not to forward the car by the slow freight train. It does not appear that the slow freight reached Newark in advance of the train which brought the car. If that was the fact, still the company was not negligent in holding the car, for the sick cow was still living. In considering delay in forwarding live stock, we must remember that a delay of at least five consecutive hours was imposed upon the carrier by act of congress. *Rev. Stat.,* § 4386.

The interstate carrier is forbidden, under a penalty, to confine the cattle for a longer period than twenty-eight consecutive hours without unloading for rest, water and feeding. The time of transit between Pittsburg and Newark appears, from the facts agreed upon, to have been more than twenty-eight hours. The carrier was therefore required by law to delay at least five hours. No other train by which the cattle could be forwarded, except the slow freight, seems to have left Altoona during the delay and before the train which took the cattle. Negligence cannot be inferred from the delay under the circumstances of this case.

Assuming, what the state of the case fails to show, that the bad condition of the cattle was due to the failure to feed and water, the question remains: Is the defendant liable, notwithstanding the special contract which required the shipper to load, take care of, feed and water the stock, whether delayed in transit or otherwise?

The position of a carrier of live stock is so different from the position of a common carrier of goods not endowed with life, that many judges have held that carriers of live stock are not subject to the liability of common carriers. Cases are collected in 5 *Am. & Eng. Encycl.* 478. It is suggested in Judge McClain's article, in 6 *Encycl. of L. & P.* 371, that this view was adopted in analogy to that under which a carrier of slaves was held not to be liable as a common carrier of goods. *Boyce* v. *Anderson,* 2 *Pet.* 150.

As was said by Justice Field in *North Pennsylvania Rail-*

136 NEW JERSEY SUPREME COURT.

Lewis v. Penna. R. R. Co. 70 N. J. L.

road Co. v. *Commercial National Bank of Chicago*, 123 U. S. 727: "A railroad company, it is true, is not a carrier of live stock with the same responsibilities which attend it as a carrier of goods. The nature of the property, the inherent difficulties of its safe transportation and the necessity of furnishing to the animals food and water, light and air, and protecting them from injuring each other, impose duties in many respects widely different from those devolving upon a mere carrier of goods."

It has accordingly been held, by an unbroken line of decisions, that contracts, limiting the liability of carriers of live stock and casting upon the shipper the obligation to feed and water en route, are valid. *South, &c., Alabama Railroad Co. v. Henlein*, 52 *Ala.* 606; *Georgia Railroad Co. v. Spears*, 66 *Ga.* 485; *Central Railroad Co. v. Bryant*, 73 *Id.* 722; *Cooper v. Raleigh, &c., Railroad Co.*, 110 *Id.* 659; 36 *S. E. Rep.* 240; *St. Louis Railroad Co. v. Cleary*, 77 *Mo.* 634; *Betts v. Farmers' L. & T. Co.*, 21 *Wis.* 81; *Morrison v. Phillips, &c., Construction Co.*, 44 *Id.* 405.

And this even in states where there is a statute forbidding a carrier to relieve himself by contract from his common law liability. *Grieve v. Illinois Central Railroad Co.*, 104 *Iowa* 659; 74 *N. W. Rep.* 192; *Burgher v. Chicago, &c., Railroad Co.*, 105 *Iowa* 335; 75 *N. W. Rep.* 192.

The duty to feed and water his own cattle is naturally the duty of the shipper, and the federal statute already referred to treats it as such and devolves it primarily upon him.

Where such a contract is made the carrier cannot be held for its failure to feed and water the cattle. *Georgia Railroad Co. v. Reid*, 91 *Ga.* 377; *Terre Haute and L. R. Co. v. Sherwood*, 132 *Ind.* 129; 31 *N. E. Rep.* 781; *Faust v. Chicago, &c., Railroad Co.*, 104 *Iowa* 241; 73 *N. W. Rep.* 623; *Union Pacific Railroad Co. v. Langan*, 52 *Neb.* 105; 71 *N. W. Rep.* 979; *Fort Worth, &c., Railroad Co. v. Daggett*, 87 *Tex.* 322; 28 *S. W. Rep.* 525.

The plaintiff cannot recover where there is such a contract for a failure to feed and water, for the reason that the car-

rier owes him no duty to feed and water. The duty is by contract cast upon the shipper. To hold otherwise would make it possible for the shipper to recover damages caused by his own breach of contract and those damages would then be recoverable in turn by the carrier in a suit upon the contract.

This case differs from *Brockway* v. *American Express Co.,* 168 *Mass.* 257; 47 *N. E. Rep.* 87.

The special contract in that case seems not to have contained the provision requiring the shipper to feed and water the horses, and the contract was held invalid because it sought to exempt the carrier from liability for its own negligence. In that case, moreover, the shipper had made arrangements to water and feed the horses, and the carrier's agent did not comply with his request to unload the horses for that purpose.

It has been held that if the carrier knows that no one is accompanying the animals to care for them, that duty devolves upon the carrier. *Louisville,. &c., Railroad Co.* v. *Spalding,* 8 *Ky. L. Rep.* 355; *Chicago, &c., Railroad Co.* v. *Williams,* 61 *Neb.* 608; 85 *N. W. Rep.* 832.

This view does not commend itself to us. The shipper, under that view of the law, secures a right of action against the carrier for damages caused by his own breach of contract. In our judgment the rights and obligations of the parties must be determined by the contract they have made.

It is argued by the plaintiff that the agreement of the shipper to feed and water the cattle is without consideration. It is, however, one of the terms of the contract which the parties had the right to make, and is made upon the same consideration as any other term of the contract.

The judgment should be reversed, with costs, and there should be a judgment of nonsuit.