FRANK D. WINN v. AMERICAN EXPRESS COMPANY.

**Carriers:** PLEADINGS: CONSTRUCTION. Where a petition is fairly susceptible of two constructions the defendant may frame his answer to meet the construction placed upon it by him, and the plaintiff can not assail the allegations of the answer because the petition is capable of a construction which would render the defendant's allegations irrelevant and immaterial.

In this action for the death of a hog while in the possession of the defendant express company for transportation, the petition alleged, in addition to the ordinary written contract of shipment, a verbal contract by which defendant agreed to convey the hog to the car by itself in a single covered wagon, but that in violation of this oral agreement it hauled the hog in a transfer wagon with other crated hogs, and so piled the crates as to cut off the circulation of air about plaintiff's hog, and that the wagon was negligently driven over rough streets and the hog was negligently handled by defendant. *Held*, that the petition could fairly be construed as presenting a cause of action for breach of the special oral contract, and appropriate allegations in answer thereto were proper.

**Same:** WAIVER OF LIABILITY. Allegations of the answer in this case that the plaintiff was present when the hog was loaded onto the transfer wagon and accompanied it to the car, and that everything done by the defendant in connection with the transfer was with his knowledge and approval, were also proper as tending to show a waiver of the alleged oral contract.

**Same:** SHIPMENT OF LIVE STOCK: CONTRACT: LIMITATION OF LIABILITY: BURDEN OF PROOF. A carrier can not even by contract impose upon the shipper of live stock the obligation to perform the duties resting upon the carrier, by an agreement requiring the shipper to accompany and care for the stock; but where the shipper in

fact does accompany the stock and performs duties required by the contract, such fact becomes material in determining the liability of the carrier in case of injury thereto and casts upon the shipper, in the first instance, the burden of showing that loss or injury did not occur through his fault, not because of the contract but because he actually undertook to perform the duties imposed upon him thereby.

**Pleadings:** SUFFICIENCY: MOTION TO STRIKE.· Where the allegations of a pleading are pertinent and appropriate as far as they go, the objection that the same are insufficient is not ground for a motion to strike but rather for a more specific statement.

**Interstate Commerce Act:** SPECIAL PRIVILEGES: INVALIDITY. The Interstate Commerce Act requires that carriers shall give one rate and equal privileges to all shippers; so that a shipper can not predicate a claim for loss or injury to the shipment on a contract for special privileges or facilities, and in an action based thereon the carrier may show the invalidity of the contract.

**Carriers:** LIMITATION OF LIABILITY: INTERSTATE COMMERCE ACT. A contract limiting the liability of an express company for the value of the shipment is void, both at common law and under the statute of this state; and this rule is not affected by the provisions of the interstate commerce law.

**Same:** UNDERVALUATION OF SHIPMENT: EFFECT. The fact that a shipper places a small valuation on the property does not relieve the carrier from liability in case of loss for its true value, but that fact is admissible as bearing on the question of true value and of whether the proper manner of shipment was adopted by the carrier in view of such valuation.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

WEDNESDAY, NOVEMBER 16, 1910.

ACTION for damages for the value of a boar alleged to have been delivered to the defendant for transportation on August 30, 1907, at Des Moines. Answering the petition, the defendant pleaded certain affirmative matter. Upon motion of the plaintiff, certain portions of such affirmative matter so pleaded in the answer were stricken,

on the general ground that the affirmative matter so as-
sailed did not constitute any defense either in whole or
in part.   From such ruling of the trial court, the defendant
has appealed.—*Reversed.*

*Guernsey, Parker & Miller,* for appellant.

*Franklin & Miller,* for appellee.

Evans, J.—This appeal on its face presents questions
whether certain affirmative matters were properly pleaded
by the defendant in answer to the plaintiff's petition.   Be-
fore we can appropriately consider such questions, however,
we are confronted with the preliminary difficulty of deter-
mining the construction which should be put upon the
plaintiff's petition.   Plaintiff is assignee of the shipper.
For the purpose of this discussion, it will be more con-
venient of speech for us to ignore the assignment and refer
to the shipper as the plaintiff.   The petition asks to recover
of the defendant $8,000 as the alleged value of a boar
which was delivered to the defendant on August 30, 1907,
at the State Fair Ground at Des Moines to be transported
to a point in Nebraska.   The hog was transported by the
defendant from the State Fair Ground to the railroad
station in the city, and was unloaded from the wagon to
the railroad trucks preparatory to being placed in a car.
Within five minutes after it had been placed upon such
truck, and before it had been loaded in the car, it died.
The ground upon which the defendant's liability is pred-
icated in the petition is involved in uncertainty, and the
respective arguments of the parties upon the main questions
are based upon differing constructions of the petition.
Taking one view of the petition it projects itself along three
lines of attack, namely:   (1)  A breach by defendant of
the written contract, which is set out in full and of a
special verbal contract concurrent therewith;  (2)  alleged

negligence predicated upon the breach of such contract; (3) negligence.

Omitting that part of the petition which sets forth the written contract and alleges delivery of the hog thereunder, we quote therefrom as follows:

That the said American Express Company agreed to haul the said boar to the Lincoln car, in a single covered wagon, by himself. That when the said J. T. Ward delivered the said boar to the said express company, the said company loaded the said boar in a transfer wagon with nine other crated hogs. That the said express company placed one crate in front of, another crate on top of, and one crate on each side of, the said boar, 'Statesman,' completely cutting off the circulation of air from him. That the night of the 30th of August, A. D. 1907, was a very hot one, and that the boar, a short time after he was loaded, began to suffer greatly with the heat.

That the said boar at the time he was delivered to the said express company, was in good, sound condition.

That the said wagon, containing the said boar, was driven to the office of the said express company, and that the said driver selected the roughest route over which to haul the said boar. That the said driver of the wagon did drive the same across many railroad tracks on the way to the express office, and when he arrived there he was ordered to take the said boar to the Lincoln car, and unload him therein.

That the said driver recrossed the said tracks and proceeded to the Lincoln car. That he was told that he could not unload the said hog there, and that the said wagon and the hogs therein were driven back across the said tracks to the office of the said express company, whereupon the driver reported for further orders. That at this time the said J. J. Ward entered the said office of the said express company and asked those in charge if they could not help him get the boar unloaded, and further told them that the said boar was a very valuable one, and that the said boar was suffering greatly from the heat. That the said parties in charge of the said office told the said J. J. Ward that they could do nothing for him.

That thereupon the said driver of the said wagon was

instructed to haul the said boar across the tracks and unload him on a truck. That the said driver did recross the said tracks and unloaded the said boar upon a truck, and that five minutes after the said boar was unloaded he was dead. That the said American Express Company did negligently load the said boar in the said transfer wagon with nine other hogs. That the said American Express Company did negligently load the said hogs so as to shut off the free circulation of air from the said boar 'Statesman.'

That the said American Express Company did negligently drive the said wagon with the said boar therein over a very rough route; there being a much better and smoother route they could have selected. That the said American Express Company did negligently handle the said boar from the time they received him until he was unloaded, five minutes before his death, and failed wholly to use any care whatever with the said boar.

That the driving in a careless manner over the rough roads and across the said railroad tracks, many and divers times, did greatly shake up, jolt, and jostle the said boar, and did heat up the said boar to a dangerous temperature.

That the said J. J. Ward was free from any and all contributory negligence whatever.

That the said American Express Company, by their said negligence, caused the death of the said boar.

It is the claim of appellant that this petition should be construed as predicating liability upon a breach of the contracts set forth. Plaintiff's counsel, however, contend in argument that the action sounds solely in tort, and that the claim of liability is predicated wholly upon a breach of duty as a common carrier, and that all reference in the petition to the contracts is mere surplusage, pleaded inadvertently or by way of inducement.

In its answer to the petition, the defendant, among other things, pleaded as follows:

· (1) That it is provided in the contract, Exhibit A to the plaintiff's petition, among other things, as follows: 'The shipper agrees to load, transship, and unload said animals at his own risk, and, during the transportation

thereof, to unload and load the said animals whenever the same may be necessary or required, at his own risk, and to furnish the necessary laborers therefor; and further agrees to cause the necessary attendants to accompany and take charge of said animals, the express company furnishing free transportation for the attendants who have signed the attendants' contract appended hereto, and also furnishing laborers to assist in loading and unloading said animals at the point of shipment and destination, such attendants and laborers not to be regarded, deemed or taken to be the agents of the express company for any purpose whatever, but, on the contrary, such attendants and laborers, shall be deemed and taken to be the agents of the shipper.'

(2) That one of the owners of the animal in question was present when the said animal was loaded upon the transfer wagon referred to and accompanied the said animal upon the said wagon to the railroad station, and was with it continuously from the time it was loaded until its death; and that whatever was done in connection with the transportation of the said animal was done with the concurrence and approval of the owner thereof and without protest or objection from him; and that all precautions suggested by him for its welfare were adopted and followed out.

(3) This defendant further respectfully shows to the court that the tariff of rates applicable to the transportation covered by the contract attached to the plaintiff's petition made no provision for special services whereby the animal in question could be hauled to the cars in a single covered wagon, by itself; and that in the absence of such a provision in said tariff, no agreement could legally be made for said service.

(4) This defendant further respectfully shows to the court that the tariff of rates under which the shipment in question was made provided a schedule of alternative rates based upon the value of the animal shipped. That the plaintiff's assignors, in order to secure the transportation in question at less than the published tariff rates, wrongfully misrepresented the value of the animal in question, and stated the same to be fifty ($50) dollars, when, as a matter of fact, the value of the said animal at the time, if it was then in good health, was much in excess of the sum

of fifty ($50) dollars, which fact was known to the plaintiff's assignors at the time that the said valuation was, given, but was not known to the defendant, which, at the time had no knowledge as to the value of the animal in question except that obtained from shippers thereof.

That by reason of the premises, the shipment in question was unlawful. That the plaintiff is not entitled to recover, and is estopped from asserting that the value of the animal in question was, at the time of the said shipment, more than the sum of fifty ($50) dollars.

This defendant further respectfully shows to the court that by the terms of the contract sued on, the recovery of the plaintiff, if he is entitled to recovery, is expressly limited to the sum of fifty ($50) dollars and denies that the plaintiff could, in any event, recover more than said amount.

The four paragraphs, or divisions, above set forth are those which were stricken by the trial court, of which ruling complaint is made on this appeal. These paragraphs are numbered in the record as above indicated, and we will refer to them by number for the purpose of discussion. With these stricken portions of the answer before us, we will revert back to the question of the construction of the petition. If the question of construction were before us after a trial upon the merits, and not as a preliminary question involved in the settling of issues, we might feel justified in construing the petition according to the contention of the appellee along the lines indicated in *Cowan v. W. U. Tel. Co.,* 122 Iowa, 379, and *Owens v. C., R. I. & P. Ry. Co.,* 139 Iowa, 538, although it would involve more difficulty than either of those cases.

I. We think, however, that the real question before us at this point is whether the petition, as drawn, will fairly bear the construction which the defendant has put upon it, and this is so even though it might bear the other construction also. If it will fairly bear the construction which the defendant has put upon it, the defendant was justified by

1. CARRIERS:
   pleadings:
   construction.

common prudence to plead to it as so construed by appropriate and responsive allegations. In such case it does not lie with the plaintiff to assail the answer as impertinent, because an ambiguous petition might be capable of a construction which would render the defendant's allegations irrevelant and immaterial. If the plaintiff pleaded the contracts and their breach inadvertently, as contended in argument, it was an inadvertence that could not have been overlooked after the filing of defendant's answer, and it could have been readily corrected by proper amendment. If the plaintiff had set forth the written contract of shipment only, that of itself would not be inappropriate in an action sounding in tort alone, because the relation of shipper and carrier necessarily has its origin in the contract of shipment. The relation of shipper and carrier being shown, the law operates upon it and imposes upon the carrier certain duties from which it can not separate itself even by contract, and the breach of such duties by the common carrier subjects it to liability as for a tort at the election of the shipper.

But in this case the plaintiff pleaded not only the ordinary written contract of shipment, but he pleaded an additional verbal contract whereby the defendant agreed to haul the hog to the car "in a single covered wagon by himself." The supposed importance of the agreement is indicated by the alleged breaches, namely: (1) The agreement to haul the hog "in a single covered wagon" was breached by hauling him "in a transfer wagon;" (2) the agreement to haul him "by himself" was breached by hauling him with "nine other crated hogs." The allegations following set forth acts of "cutting off the circulation of air," which might be deemed a breach of the common-law duty of the carrier, and which might furnish a basis of liability, regardless of the special verbal contract, but they appear to be pleaded in reference to and as a breach of such verbal contract. We think it must be

said, therefore, that the petition fairly bears the construction at this point which appellant puts upon it. The fact that the petition contains other allegations charging negligence, and which might of themselves be sufficient as charging a breach of the defendant's common-law duty as a carrier, does not have the effect to eliminate from the petition the breach of special contract charged therein. In passing, therefore, upon the propriety of the ruling of the trial court in striking portions of the defendant's answer, we feel constrained to adopt the construction of the petition contended for by the defendant.

II. Turning now to those portions of the answer which were stricken on motion, we will consider first that portion which is numbered 2. We think such portion was clearly pleadable by the defendant as showing a waiver of the alleged special contract.

2. SAME: waiver of liability.

It seems clear also that evidence of the facts thus pleaded would be admissible upon the trial, as bearing upon the question of negligence and contributory negligence. Perhaps such evidence would be admissible on the general issue, and that there was no occasion for pleading the same, but such was not the ground of the motion or of the ruling. The ground upon which this part of the pleading was stricken would exclude evidence offered along the same line. There is another phase to this part of the pleading which we will consider in connection with the stricken part numbered 1.

III. Referring now to that part of the answer numbered 1, it is clear that standing alone it presents no defense to the plaintiff's petition. Under our previous holdings, the carrier can not, even by contract, impose upon the shipper the obligation to perform the common-law duties which rest upon the carrier. *Powers v. C., R. I. & P. Ry. Co.,* 130 Iowa, 615; *Hart v. C. & N. W. Ry. Co.,* 69 Iowa, 485; *Grieve v. Ill. C. Ry. Co.,* 104 Iowa, 659. But the

3. SAME: shipment of live stock: contract limitation of liability: burden of proof.

defendant did not plead it as a defense of itself. It should be noted here that the separation of the defendant's answer into parts, and the numbering of such parts, was done by plaintiff in his motion to strike. There was no separation or numbering of these parts in the defendant's answer. They were all pleaded together in one division of the answer. Some of them, notably the last, two, separate themselves logically and might appropriately have been numbered; yet this is not true of that part numbered 1. This is logically connected with that which follows it as No. 2 in this record. While it is true that the carrier can not bind the shipper by contract to perform the duties of the carrier, it is nevertheless true that where the shipper does in fact accompany the shipment, and does in fact assume to perform duties undertaken by the contract, such fact becomes a material consideration in determining the liability of the carrier in the given case. In such case, the burden of proof is laid upon the shipper, in the first instance, to show that the loss did not occur through any fault on his part. This burden is laid upon the plaintiff not because he contracted to perform such duties, but because he actually undertook to perform them as a matter of fact. *McManus v. Ry. Co.*, 138 Iowa, 150; *Faust v. C. & N. W. R. R. Co.*, 104 Iowa, 241; *Burgher v. R. R. Co.*, 105 Iowa, 335. Taking parts Nos. 1 and 2 together it is manifest that the intent of the pleader was to avail himself of this rule.

It is urged by appellee that this part of the answer is insufficient for this purpose because it does not plead that the "shipper actually undertook the duties referred to." It may be that the pleading is short in its allegations in this respect. Be that as it may, such defect did not furnish ground for a motion to strike. The allegations made were pertinent and appropriate as far as they went. The purpose of the pleader was manifest by fair implication if not by express

4. PLEADINGS: sufficiency: motion to strike.

allegation.   If the pleading lacked precision at this point, it was vulnerable to a motion for a more specific statement, but the defect urged was not such as rendered it vulnerable to a motion to strike.

Referring again to the part numbered 1, it may be urged that its allegations were not essential or appropriate because the material inquiry at this point is not what the shipper agreed to do, but what he in fact did do.   Nevertheless, if what was done by the shipper was so done in pursuance of a contract, though unenforceable, it seems clear that the undertaking of the contract and the performance of the act are so related to each other, as a matter of fact, that when the latter is pleaded, the former may also be pleaded as a matter of inducement thereto.   It is our conclusion therefore that the court erred in striking parts numbered 1 and 2.

IV.   Turning our attention to part No. 3 of the answer, we think the question raised thereby was pertinent. Of course, if the plaintiff recasts his petition to conform to the construction thereof, which he contends for in argument, the question involved at this point will have no further significance. The allegations here made were pertinent and responsive to that part of the petition which charged a breach of the special arrangement for particular facilities in the transportation of the hog.  · The interstate commerce act expressly forbids the carrier to "extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."   Act June 29, 1906, chapter 3591, section 2, 34 Stat. 587 (U. S. Comp. St. Supp. 1909, paragraph 1155).   The purpose of this provision is to insure not only equality of rates, but equality of privilege to all ·shippers.   This act requires that there shall be one rate and equal privileges for all.   Such rate and the privileges attending it must be published.   The manifest purpose of this

5. INTERSTATE COMMERCE ACT: special privileges: invalidity.

requirement is to close the door against all preference or discrimination, directly or indirectly. Plaintiff can not therefore be permitted to predicate a claim against the defendant as a common carrier on the theory that he had a special contract for special privileges or facilities which had not been rendered equally available to all shippers by publication, as provided by law, and the point was properly raised by this paragraph of the answer. This holding does not forbid the liability of the defendant to the plaintiff either for a breach of its common-law duty as a carrier, or for the breach of any contract of shipment which it had a lawful right to make. It only permits the defendant to assume the burden of showing the illegality of the alleged contract relied on by plaintiff.

V. We come now to the last point in the case, being involved in that part of the answer numbered 4. The defendant sought to limit its liability to the sum of $50; such amount being the basis of value upon which transportation charges were fixed. It is contended that the plaintiff was guilty of misrepresentation as to such value and that he should be precluded thereby from proving any greater value. In other words, it is contended that the agreement limiting the liability of the carrier to the sum of $50 should be enforced. The point is clearly covered by section 2074 of our Code which is as follows: "No contract, receipt, rule or regulation shall exempt any railway corporation engaged in transporting persons or property from the liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made or entered into." We have held heretofore that such an agreement is not only covered by the terms of the above statute, but that it was void at common law, as against public policy. *Solan v. C., M. & St. P. Ry. Co.,* 95 Iowa, 260; *Hart v. C. & N. W. Ry. Co.,* 69 Iowa, 485 ; *Lucas v. B., C. R. & N. Ry. Co.,* 112 Iowa, 594.

6. CARRIERS: limitation of liability: interstate commerce act.

It is urged, however, that the cited cases were all decided prior to the interstate commerce law and that they are no longer applicable. But this contention avails little to the defendant, because we find nothing in the interstate commerce law which supersedes in any manner the rule of liability which may obtain in the different states. The following excerpt from the interstate commerce act comprises all that is contained therein that is in any degree pertinent to this question: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state, shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury, to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed; provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." On the face of it this provision is rather confirmatory than otherwise of the rule which obtains in this state. That such rule presents no conflict with the act seems to have been held in *Pennsylvania R. Co. v. Hughes,* 191 U. S. 477 (24 Sup. Ct. 132, 48 L. Ed. 268). We think, therefore, that the point here urged by appellant is foreclosed by our former holdings. So far as the alleged fraud is concerned, the defendant has its appropriate measure of damage. The rule contended for by appellant obtains in many jurisdictions. The cases are collated under *Harrington v. R. R. Co.,* 108 Minn. 257, (122 N. W. 14, 23 L. R. A. [N. S.] 745).

Notwithstanding these eminent authorities, we are still convinced that the rule of our own statute is the more

wholesome and in accord with public policy. To permit

**7. SAME: under-valuation of shipment: effect.**

a carrier to limit its liability to a valuation stated at the time of shipment would operate so greatly to the advantage of the carrier as to make it desirable to be deceived. It would tend to the encouragement of, if not connivance at, undervaluation by the carrier, by placing prohibitory rates against larger valuations. There is an appropriate measure of damages for every fraud, and that is the measure of the injury resulting from it. To permit a carrier to relieve itself from liability for negligence because of a fraudulent valuation of the article is to award to it not only compensation for damages suffered, but a premium therefor, which necessarily tends to produce complacence on its part towards its own deception. Better is the rule which requires the carrier to perform the measure of its legal duty, and to be liable for the true measure of the loss in case of neglect, be the shipment great or small. The fact that the shipper puts a small valuation upon his property is always available to the carrier before the triers of fact on the question of what such value in truth was, and whether the methods of care adopted by the carrier were adequate, in view of such valuation, as one of the circumstances of the case. We think the fourth division was properly stricken by the trial court.

For the errors indicated the order of the trial court will be *reversed*.