## Ben Betts v. Chicago, Burlington & Quincy Railroad Company, Defendant.

**Agency:** ORDER OF PROOF: DISCRETION. The order of proof is largely discretionary with the trial court, and no abuse of its discretion in this case is shown by permitting evidence of an agent's agreement before showing his authority.

**Same:** RATIFICATION: EVIDENCE. Although a local freight agent of a railway company has no implied authority to settle claims for injury to property in transit, still where his agreement for settlement has been ratified by those having such authority, it is binding upon the company.
The evidence in this case is held to show ratification.

**Carriers:** LIMITATION OF LIABILITY: INTERSTATE COMMERCE ACT. The interstate commerce act requiring freight rates to be uniform does not prevent recovery of the actual loss of property while in transit, though shipped at a specified valuation.

**Same:** LIMITATION OF LIABILITY: VALUATION: STATUTES. The statute prohibiting limitation of a carrier's liability for property injured or destroyed while in transit can not be avoided by a shipping contract limiting the liability to a fixed value in consideration of a lower shipping rate; as the shipper is entitled to recover the actual loss less the difference between the freight collected and what would have been charged had the true valuation been given.

**Same:** DAMAGE TO PROPERTY IN TRANSIT: WHO MAY RECOVER. The actual owner of property destroyed while in transit may recover therefor in his own name irrespective of any agreement he may have with another to share in the proceeds when sold.

*Appeal from Lee District Court.*—Hon W. S. Withrow, Judge.

Monday, February 13, 1911.

Action on alleged contract resulted in judgment as prayed. The defendant appeals. *Affirmed.*

*Hazen I. Sawyer* and *Palmer Trimble,* for appellant.

*A. L. Parsons,* for appellee.

Ladd, J.—Plaintiff shipped a carload of mules from Grundy Center, billed over the Chicago, Rock Island & Pacific Railway to Burlington, and from there over the Chicago, Burlington & Quincy Railroad to East St. Louis, Ill. Between Burlington and Keokuk seven mules were injured, and plaintiff alleged in his petition that upon discovering their condition he telegraphed defendant's superintendent; that he turned the shipment over to the company, and that subsequently, by virtue of an agreement with it, he received all but two mules upon the company's promise to pay him $387.50 for these, their legs being supposed to have been broken, and $185 because of injuries to the other five. Recovery was sought on this alleged promise. Defendant denied having made any such agreement, alleged that, if made, no more than $100 each for the two mules might be recovered, and tendered plaintiff $420, said to "cover the damages alleged to have been received by the five mules, as alleged in plaintiff's petition, and the sum of $100 each for the two head of mules which were alleged to have been a total loss and interest." Only the difference between the value of the two mules alleged to have been bruised and the amount tendered therefor is in dispute.

I.     The evidence tended to show that the mules were injured because of a defective car, and on the morning after plaintiff telegraphed to the superintendent, he and

1. Agency: order of proof: discretion.

Higgins, the local agent, met at the stock yards and agreed to the appraisement of the damages by three men, who estimated these at amount mentioned. Higgins denied that any agreement concerning the payment of the appraisement was entered into; while plaintiff testified that it was agreed that he should take all but two of the mules, and the defendant

would pay the amount of the appraisement. Plaintiff's testimony was corroborated by that of Hull, and sufficiently supported the finding of the trial court. It is said, however, that there was error in receiving the above evidence before Higgins' authority to represent the company was shown, and that such authority was not proven. The order in which the testimony shall be received is discretionary with the trial court, and there was no abuse of such discretion.

Higgins testified that he was without authority to settle damages, and it may be conceded that his employment as local freight agent was not such as to justify an inference in contradiction of his testimony that this was a part of his duties. See *Mc-Lagan v. Railway*, 116 Iowa, 183. But there was sufficient evidence of ratification to support the court's finding. The superintendent was immediately informed of the retention of the two mules, and, by direction of the assistant general attorney of the company, who was expressly authorized "to look after the legal end of the case," Higgins sold these for $10 each, and the sums were retained by the company. Subsequently, defendant's freight claim agent, with authority to adjust such matters, in response to a letter from plaintiff's attorney, wrote, among other things, that, "as we advised Mr. Betts, $185 was the amount of damage agreed upon." Thus it appears that those in authority were aware of the retention of the two mules, and that they were sold at the instance of the attorney having authority to advise as to the proper course to pursue and the money retained by the company, and thereafter the officer, authorized to adjust such differences admitted that there was an agreement. We think this evidence sufficient to justify the finding that the company ratified such arrangement as was made.

2. SAME: ratification: evidence.

II. The shipping contract limited defendant's liability on the total loss of any of the mules to not exceed $100

each, and compensation for transportation was determined on the basis of this valuation. There was no proof of any representation of value on the part of plaintiff, save by inference from the contract, stipulating that in case of total loss payment would be made "on the basis of actual cash value at the time and place of shipment, but in no case to exceed $100 for each." Basing its contentions on the act of Congress to regulate commerce, approved February 4, 1887 (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), together with several amendments, the last of which was approved June 29, 1906 (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]), defendant contested plaintiff's right to recover more than $100 each for the mules. Without quoting from the several sections of the law, it is enough to say that the railroad company is required to make a schedule of rates for transportation and exact the same from all persons alike, and both defendant and the shipper are prohibited from evading this requirment by any device whatsoever. The rate on the shipment of mules valued above $100 each was twenty-five percent of the tariff on each one hundred percent, or fraction thereof, in excess of the above valuation, and it is argued that, in entering into the shipping contract fixing the value of the mules at not exceeding $100 each, when some of them were worth much more, plaintiff perpetrated a fraud under paragraph 3, section 10, of the above act. For all that appears, the average value may not have been more than $100 each, in which event it would not seem deceptive practice to have procured the low rate. Moreover, under the alleged agreement of settlement, the company retained the mules, and they were not a total loss. Even if there were undervaluations, however, it does not follow that the limitation of recovery should be given effect.

It may be conceded that many authorities lay down

*3. CARRIERS: limitation of liability: interstate commerce act.*

the rule as contended by defendant, that in event of loss the shipper is estopped from asserting a higher value than that given as a basis upon which to compute freight charges; but this court is committed to the doctrine that the statute prohibiting the limitation of liability of a common carrier (sections 2074, 3136, Code), can not be evaded in this way, and that exact justice is administered by awarding the shipper actual value of the animal or article destroyed in being transported, less the difference between the freight charges collected and what would have been charged had the true value been given. That the act of Congress referred to is not necessarily inconsistent therewith appears from *Winn v. American Express Company,* 149 Iowa, 295, and the view therein expressed finds confirmation in a recent decision of the United States Circuit Court of Appeals of the Eighth Circuit. *Latta v. Railway,* 172 Fed. 850 (97 C. C. A. 198). There was no error in disregarding the attempt to limit the liability by contract.

*4. SAME: limitation of liability: valuation: statutes.*

III. The point is made that plaintiff can not maintain this action, for that the shipment was by a partnership consisting of plaintiff and his uncle, C. M. Betts, instead of plaintiff alone. The evidence warranted no such conclusion. The plaintiff paid for the mules, shipped them in his name, and was to pay his uncle half of the profits realized. Subsequently, the amount to be recovered in this case was figured by them as profits; but this did not alter plaintiff's right to recover the damages to the mules, the title being in him, nor relieve him from the obligation of paying one-half the profits realized, regardless of whether measured by this claim. Having owned the mules, he was entitled to maintain an action for damages thereto, and it is no concern of the defendant in what manner he disposes of the proceeds. See section 3459, Code.—*Affirmed.*

*5. SAME: damage to property in transit: who may recover.*