BLAIR & JACKSON, Appellees, v. WELLS-FARGO & COMPANY.

**Carriers:** NEGLIGENT TRANSPORTATION : EVIDENCE. A connecting carrier 1 which receives and forwards a car supplied by the initial carrier, with notice of its defective condition, and in which live stock is being transported, makes the car its own, and is responsible to the shipper for injuries to the stock resulting from unfitness of the car. In the instant case the question of whether the connecting carrier was negligent in forwarding the stock in the alleged defective car was for the jury.

**Same:** SHIPMENT OF LIVE STOCK : CONTRIBUTORY NEGLIGENCE : EVIDENCE. 2 A shipper of live stock who accompanies the same and assumes to give it care and attention on the journey, is bound to perform the duty with that reasonable diligence and efficiency exercised by ordinarily prudent persons; he may assume however that the carrier will furnish reasonably safe carriage and is not bound to make close inspection of the car to discover defects therein. The evidence in this case is such that it can not be said as matter of law that plaintiffs were guilty of such negligence as to relieve defendant of liability for failure to furnish a safe car in which to forward the stock.

**Same:** LIMITATION OF LIABILITY BY CONTRACT. A contract which limits 3 the liability of a carrier for damages resulting from negligence in the performance of its common law duties is in contravention of public policy and void, under the statute of this state. And if the case were to be determined by the law of Missouri, where the connecting carrier took charge of the shipment, and where for a consideration the carrier may limit its liability by a contract which is not unreasonable in its terms and is assented to by the

shipper, still under the evidence it can not be said as matter of law that defendant is relieved of liability by reason of plaintiff's negligence.

**Same:** CONTRACTS LIMITING LIABILITY: UNREASONABLENESS. A contract limiting the liability of a carrier in case of total loss of the shipment to a sum equal to the charge for its transportation is void for unreasonableness and inequity.

**Same.** The fact that a carrier has filed with the Interstate Commerce Commission a schedule of rates and forms of contract on which the same are based, which provide for a limitation of the carrier's liability, is not a defense to an action for negligent injury to the shipment, where the contract limiting liability is unreasonable and unjust.

**Same:** TAXATION OF ATTORNEYS' FEES. The provision of the interstate commerce act, authorizing the taxation of attorneys' fees against the carrier in cases of unlawful discrimination, does not in terms or by implication include such an allowance in actions for damages arising from the carrier's negligence.

*Appeal from Wapello District Court.*—HON. D. M. ANDERSON, Judge.

TUESDAY, APRIL 9, 1912.

ACTION at law to recover damages from the defendant, a common carrier, for injury and loss to property in course of transportation. There was a judgment for plaintiffs, and defendant appeals.—*Affirmed* on both appeals.

*Jaques & Jaques* and *Holt, Wheeler & Sidley,* for appellant.

*Chester W. Whitmore,* for appellees.

WEAVER, J.—The plaintiffs having in their possession at Bloomington, Ill., nine thoroughbred stallions which they wished to remove to Los Angeles, Cal., applied to the National Express Company, a common carrier at Bloom-

ington, to obtain the transportation. The agent of said carrier undertook to procure the necessary car, but, being unable to ascertain the exact rate for the transportation through to Los Angeles, took and received therefor the sum of $675 with the understanding that if this sum was found to be in excess of the schedule rate such excess would be returned. According to plaintiffs' showing, the car was furnished, the money paid, and horses loaded, and when about the time for the train to start, and too dark to read writing, the agent came to the car and informed plaintiffs they would have to sign a paper which would serve as a pass enabling them to accompany the shipment. In response to this request, they say they signed the paper without reading it, but signed no other contract or agreement. They deny that any mention was made of any limitation to be placed on the valuation of the horses, or that they did in fact value them to the agent at any given sum, but did inform him that said horses were of large value and that they had just paid $300 to $800 each for them.

The National Express Company, it would seem, turned the car directly to the American Express Company which took it to Kansas City, Mo., where it arrived the following day. On the trial, a shipping bill or contract was produced purporting to have been entered into between plaintiffs and the National Express Company by which the company acknowledges receipt of $600 as a through rate for the shipment of the horses to Los Angeles. It contains a statement that before delivering the horses to the carrier plaintiffs had demanded to know the rates of transportation, and were given and shown alternative rates proportioned to the value of the animals, and that they then and there declared and fixed said value at not to exceed $75 for each horse, and further agreed in consideration of the rate being based on such value that the carrier should be held liable for no greater sum in the event of loss or injury thereto in the course of transportation.

Arriving at Kansas City, plaintiffs were met by the agents of the American and the Wells Fargo Companies. At the request of the former, the copy of waybill or shipping contract held by plaintiffs was delivered up and they claim never to have known the contents of the paper so surrendered until it was produced in evidence on the trial. Then, or very soon thereafter, a contract similar in terms was executed between the American Company and the Wells Fargo Company, by which the latter in consideration of $525 undertook to carry the shipment through to Los Angeles. This contract was not signed by the plaintiffs, nor are they mentioned therein as owners of the horses or as parties to the agreement, but attached thereto was what is called an "attendant's contract," which evidences the right of the persons attending the animals to transportation on the train, and their waiver of any right of action for personal injuries sustained in the course thereof. This paper was presented to and signed by the plaintiffs, but they deny that they were asked to, or did in fact, put any valuation on the horses, and deny that they entered into any agreement to limit the amount of their recovery in case of injury to said property.

It is alleged as a cause of action that the car in which the horses were carried was defective and unfit for the service; windows being broken, and the doors being so warped or imperfect that they would not close tightly, and that, after leaving Kansas City and entering the mountains, a snowstorm arose, and the snow and cold winds entering the car through the broken and defective places chilled the horses, producing pneumonia in several of them. They further aver that they reported the condition of the car and of the horses to defendants' messenger on the train, but no assistance or relief was rendered until the train arrived at Albuquerque, N. M., where two of the horses, being too sick to safely travel farther, were left in charge of a surgeon for care and treatment. One of these horses

soon died, and the other it is claimed was greatly depreciated in value. Soon after arriving at Los Angeles, another of the horses died and others were left in weak and emaciated condition. For the damages so sustained, plaintiffs ask a recovery of $2,000.

The defendant denies negligence on its part, alleges contributory negligence by the plaintiffs, and pleads the clause in the alleged shipping contracts limiting its liability to a sum not exceeding $75 for each animal. Further answering, defendant pleads the alleged contract limiting the value of the horses to $75 each, and says that the rate charged the plaintiffs was based upon a classification and schedule made according to law and filed with the Interstate Commerce Commission, which classification provided in terms that horses would be received for transportation only upon execution of the company's live stock contract, such as is pleaded in this case.

Referring further to this defense, the allegations of the answer are somewhat complicated, and, to avoid any misstatement in an attempted condensation of its terms, we quote therefrom as follows:

That all the aforesaid schedules, tariffs, and classifications of all said express companies are extremely technical, as are provisions for their filing, publication, and interpretation, and can not ordinarily be correctly read and interpreted by nonexperts; that the correct interpretation of said classifications, tariffs, and exceptions thereto is that at the time plaintiff shipped said horses from Bloomington, Ill., to Los Angeles, Cal., there was but one method by which said shipment could be lawfully carried, which was by contract in form as set forth in Exhibits A and B aforesaid, in accordance with said tariffs, classifications, and schedules, and that, when the forms of contract above referred to as filed with the Interstate Commerce Commission provided for the limitation of liability of not more than $75 per animal, the rate was $600 between Bloomington, Ill., and Los Angeles, Cal.; that without such limited liability the legal rate was higher, being at the rate as

set forth in said Exhibit A aforesaid, each car load being calculated as in such schedules, tables, and classifications aforesaid to be of the weight of 10,000 pounds; that, when a limitation of liability was stated in the sum of $75 per head, the rate for shipment was $525 between Kansas City, Mo., and Los Angeles, Cal., aforesaid, when made subject to form of contract above referred to as filed with the Interstate Commerce Commission and was much higher, being at the rate set forth in said Exhibit B aforesaid, when made without such limitation of weight per car load being fixed by said schedules, tables, classifications and tariffs at 10,000 pounds; that said rates of $600 and $525 were the only lawful rates for transportation of horses by express between Bloomington, Ill., and Kansas City, Mo., respectively, and Los Angeles, Cal., and shipment must then be in accordance with the terms and conditions of said contracts Exhibits A and B aforesaid, and that no tariffs at the time of shipment in question, which had been passed and filed as required by law, authorized and permitted the shipment in question except under written contracts in the form hereinbefore referred to as filed with the Interstate Commerce Commission, and containing limitations of liability set out in said contracts.

The answer further charges plaintiffs with fraud and deception in falsely billing and undervaluing the horses. These issues were tried to a jury and verdict returned for plaintiff for $1,607.

While the record is unusually voluminous and at some points by no means easy of comprehension, appellant's counsel have condensed their statement of grounds for reversal into three brief propositions: First, that the plaintiff's charge of negligence is not sustained by the proof; second, that the plaintiffs are shown to be guilty of contributory negligence as a matter of law; and, third, that the limitation upon the value of the animals was a valid stipulation of the contract, and the court should have so instructed the jury. Appellant having thus defined its contention, our discussion will be limited to the points stated.

I.  Without taking time for preliminary discussion, and assuming for the purposes of this case that proof of defendant's negligence was essential to a recovery, we are of the opinion that under all the evi-

**1. CARRIERS: negligent transportation: evidence.** dences the question was for the jury.  No unprejudiced person can read the record even as made by the appellant's abstract and not be satisfied of the sufficiency of the evidence to support a finding that the car, in which the shipment was carried, was in a condition unfitting it for the safe transportation of horses over a long distance at that season of the year, and that by reason of such unfitness the horses were exposed to the effects of a severe snowstorm bringing on debility and disease from which some of them died and others were more or less injured.  It is true that the car was furnished by the initial carrier, and not by the Wells Fargo Company, and it may be conceded that the negligence in this particular is not chargeable to the latter company, but it did receive the car at Kansas City and made use of it in performing its own undertaking to carry the shipment to Los Angeles.  Its own agents, or some of them, admit having noticed at the time some of the defects in the car of which plaintiffs complain, and, even if entirely free from responsibility up to that date, yet in receiving and making use of the car, and sending it forward as the vehicle of the transportation it had itself undertaken to furnish, appellant adopted it as its own and became answerable to the plaintiffs for its fitness.  There was evidence from which the jury could find that some of the windows and deck lights of the car were broken, and that the doors were so improperly fitted or so out of repair that they could not be effectually closed, that through these openings the storm beat and snow drifted upon the horses, and that after the storm had set in, revealing the deficiencies of the car, plaintiffs gave notice to the defendant's messenger on the train asking that said conditions be remedied, but

that no aid was afforded until they arrived at Albuquerque, where two of the animals were left because of their sickness. It is true that much of this testimony is the subject of dispute, but its credibility and weight were for the jury alone. Under this condition of the record, the court can not interfere with the verdict in this respect.

II. Nor can we say as a matter of law that the plaintiffs were guilty of contributory negligence relieving the appellant from liability. True, as they accompanied the

2. Same: ship-
ment of live
stock: contrib-
utory negli-
gence: evi-
dence.

horses and assumed to give them personal care and attention on the journey, they were of course bound to perform that duty with the reasonable diligence and efficiency of ordinarily prudent persons, but nothing appears in the record to justify a peremptory holding that they did not perform the full measure of their duty in this respect. They testify, and there is little if anything to discredit them so far as this is concerned, that they fed, watered, and blanketed the horses, and that upon the first appearance of sickness they administered such remedies as they could command, and finally telegraphed ahead to Albuquerque for a veterinary surgeon to come to their assistance at that point.

It is the further claim of the appellant that the defects, if any, in the car must have been visible while still at Kansas City, and that plaintiffs were negligent in not demanding the needed repairs before leaving that place.

Evidence was also offered in defense that plaintiffs were there asked if they did not wish the defects in the car doors attended to, but declined, saying the car was all right, but this is denied, and its truth was for the jury to determine. When a carrier undertakes to furnish a car for a particular service, it is in duty bound to supply one which is free from substantial defects unfitting it for the reasonably safe carriage of the proposed freight, and, while the shipper can not shut his eyes to the clear and manifest unfitness of the car tendered him, he is under no legal

obligation to closely inspect it. In other words, he is entitled to assume, under all ordinary circumstances, that the carrier has performed its legal duty, and that the car is reasonably well adapted to the purpose for which it is ordered.

If, as plaintiffs testify, comparatively mild weather prevailed from the time the horses were loaded until after they left Kansas City, and by reason thereof the unsuitableness of the car to properly protect the horses did not become at once apparent to them, we are not prepared to say that they used the car so furnished at their own peril, or that failure to make complaint at Kansas City operates as a waiver or estoppel against their right to maintain this action. In short, as a general proposition, the question of contributory negligence is purely one of fact with which the court will not interfere except by way of pertinent instructions to the jury, and we find nothing in the case making it an exception to that rule.

III. Whether at common law a carrier may by contract with a shipper wholly or in part exempt itself from legal liability for loss or injury to the subject of transportation is a question upon which there is much conflict of judicial opinion. In some jurisdictions the right to so contract has been held to be practically unlimited, while in others this doctrine is distinctly repudiated. It is fairly well settled, however, by the better considered precedents that, in so far as such contracts undertake to relieve the carrier from liability for damages resulting from its negligence in the performance of the duties imposed upon it by law, they are in violation of public policy, and therefore of no validity.

3. SAME: limitation of liability by contract.

In many states it has been held that this principle is not violated by a contract in which the shipper in consideration of a reduced rate of freight charges agrees that his shipment is of a stated value, and that, in event of loss or injury thereto in transportation, his recovery against the

carrier shall not exceed such stipulated valuation.    The
reasoning upon which this holding is based is by no means
convincing, and its soundness is denied by other courts, as
well as our own.    *Solan v. Railroad Co.*, 95 Iowa, 260;
*Lucas v. Railroad Co.*, 112 Iowa, 594.    In this state for
many years this theory of common-law liability has been
incorporated into the statute and consistently upheld in our
decisions.    Code, section 2074; *Solan v. Railroad Co.*, 95
Iowa, 260; *Lucas v. Railroad Co.*, 112 Iowa, 594; *Winn
v. Express Co.*, 149 Iowa, 259; *Cramer v. Railroad Co.*,
153 Iowa, 103; *Brush v. Railroad Co.*, 43 Iowa, 554;
*McCune v. Railroad Co.*, 52 Iowa, 602; *Davis v. Railroad
Co.*, 83 Iowa, 744; *Betts v. Railroad Co.*, 150 Iowa, 252.
Both Illinois and Missouri have statutes which make the
carrier liable for the consequences of its negligence sub-
stantially as at common law.    Ann. St. Ill. 1896, page
3285; Acts 43 Gen. Assem. Mo. page 53.

As the charge made by the plaintiffs in this case is
expressly grounded upon specific allegations of negligence
and violation of duty as a common carrier, and as the
verdict of the jury constitutes a finding against appel-
lant in these issues, we have then to inquire whether any-
thing is disclosed in the record which relieves appellant
in whole or in part from its common-law liability to re-
spond in damages.    If that question is to be determined by
the law of this state, then, for reasons already suggested,
it must be answered in the negative.    It is argued for
the appellee that, as this state condemns such contracts as
being against public policy and therefore void, its courts
will not recognize or enforce them even if valid where
made, but will leave the parties who plead them to seek
their remedy in the jurisdictions against whose policy such
agreements do not offend.    But, in view of the fact that in
our opinion the judgment below must be affirmed on other
grounds, it is unnecessary to consider that question at this
time.    Even if we assume that the rights of the parties

are to be measured by the law of Missouri where appellant took charge of the shipment, it must still be said that the defense is not so clearly established as to require our interference with the verdict. It appears to be the rule in that state, as well as in most states where the carrier may lawfully contract for a limitation of its liability in consideration of special or reduced rates of freight, such an agreement will be enforced, only where it is shown to have been assented to by the shipper, is reasonable in its terms and supported by a sufficient consideration. Moreover, in most jurisdictions, even when the validity of such contracts are recognized, the limitation of liability is held to apply only where the loss or injury for which compensation is sought is attributable to some cause other than the carrier's negligence. *Ficklin v. Railroad Co.,* 117 Mo. App. 221 (93 S. W. 847); *Ward v. Railroad Co.,* 158 Mo. 226 (58 S. W. 28); *McFadden v. Railroad Co.,* 92 Mo. 343 (4 S. W. 689, 1 Am. St. Rep. 721); *Kellerman v. Railroad Co.,* 136 Mo. 177 (34 S. W. 41, 37 S. W. 828); *Holland v. Railroad Co.,* 139 Mo. App. 702 (123 S. W. 992); *Railroad Co. v. Calumet,* 194 Ill. 9 (61 N. E. 1095, 88 Am. St. Rep. 68); *Express Co. v. Stettaners,* 61 Ill. 184 (14 Am. Rep. 57); *Boscowitz v. Express Co.,* 93 Ill. 523 (34 Am. Rep. 191); *Railroad Co. v. Lockwood,* 84 U. S. 357 (21 L. Ed. 627); *Fuller v. Railroad Co.,* 158 Ill. App. 198, filed November 2, 1911.

Upon the question of the reasonableness of the limitation but a brief word is needed. It will be remembered the transportation charges paid in advance were $675 (or after readjustment $600) while the limitation of liability, if effective, restricts the plaintiffs' recovery, in case of total loss, to $675. The net effect of this agreement would be that, although appellant should be guilty of the grossest negligence and thereby cause the entire destruction of the property, the extent of its liability would

4. SAME: contracts limiting liability: unreasonableness.

be to return to plaintiffs this freight charge, which it never earned, leaving them with not a dollar of compensation for the loss of their horses. It requires neither argument nor illustration to demonstrate the utter unreasonableness and inequity of such an arrangement. The net effect of it is not simply to restrict the amount which plaintiffs may recover for loss or injury to their property, but to deprive them of all compensation therefor. In other words, it accomplishes precisely what the statutes and the courts agree in saying shall not be done—the entire exemption of the carrier from all liability for its negligence. It is a contract which we think no court should undertake to enforce until by legislative enactment it is made its imperative duty so to do. To enact such a rule would be to relieve the carrier from the strongest inducement which the law has placed upon it to promptly and efficiently discharge the quasi public duties which it assumes in entering upon this employment.

We know of no more forcible and just presentation of this principle than is found in the language of Mr. Justice Bradley in *Railroad Co. v. Lockwood*, 84 U. S. 357 (21 L. Ed. 627). Answering the argument that the question is one of mere private contract and involves no public interest, he says:

Is it true that public interests are not affected by individual contracts of the kind referred to? Is not the whole community affected by holding such contracts valid? If held valid, the advantageous position of the companies exercising the business of common carriers is such that it places it in their power to change the law of common carriers, in effect, by introducing new rules of obligation. The carrier and his customer do not stand on a footing of equality. The latter is one individual in a million. He can not afford to higgle or stand out or seek redress in the courts. His business will not admit of such course. He prefers rather to accept any bill of lading or sign any paper the carrier may present, often indeed without knowing what

one or the other contains. In most cases he has no alternative but to do this or abandon his business. Contracts of common carriers like those of persons occupying a fiduciary character, giving them a position in which they can take undue advantage of persons with whom they contract, must rest upon their fairness and reasonableness.

After still further discussion along this line, the same distinguished jurist proceeds:

Conceding, therefore, that special contracts made by carriers with their customers limiting their liability are good and valid so far as they are just and reasonable, to the extent for example of excusing them for all losses happening by accident without negligence or fraud on their part, when they ask to go still further and be excused for negligence, an excuse so repugnant to the law of their foundation and to the public good, they have no longer any plea of justice or reason to support such a stipulation, but the contrary. And then the inequality of the parties, the compulsion under which the customer is placed, and the obligations of the carrier to the public, operate with full force to divest the transaction of validity.

In the same opinion the writer quotes with approval rules stated by Judge Redfield as follows: "First, that the exemption claimed by carriers must be reasonable and just, otherwise it will be regarded as extorted from the owners of the goods by duress of circumstances, and therefore not binding; and, second, that every attempt of carriers by general notices or special contract to excuse themselves from responsibility for damages resulting in any degree from their own want of care and faithfulness is against the good faith which the law requires as the basis of all contracts, and therefore based upon principles and policy which the law will not uphold." See, also, upon this point, *Everett v. Railroad Co.,* 138 N. C. 38 (50 S. E. 557, 1 L. R. A. (N. S.) 985).

This doctrine is clearly sound and healthful, and we think it pervades the law not alone of this state but that of

Missouri and Illinois as well, and in our judgment when applied to the facts of the present case compels the conclusion we have already indicated that the limitation relied upon by the appellant is one, the validity of which can not and should not be approved. This conclusion renders unnecessary any discussion upon the question of consideration for the alleged limitation, or of the assent of the plaintiffs to the alleged contract. We may say, however, that in our opinion the jury were justified upon the record in finding that plaintiffs never gave their assent to the contract on which appellant relies, and were not bound by its limitations.

IV. The only material proposition of the defense, not already considered, is upon the claimed effect of the act of the appellant in preparing its classification of freights and schedule of rates, together with the form of contract stipulations upon which they are based, and filing the same in the office of the Interstate Commerce Commission. If we understand the theory of counsel, it is that this filing brings the rates under the operation of the interstate commerce laws enacted by Congress and, until changed or withdrawn, the carrier can not contract on any other basis, nor can the shipper demand or obtain any other rates, and, as the rates are based upon the requirement of a written contract limiting the carrier's liability as aforesaid, the validity of such contract is not open to question in this case.

5. Same.

The defense thus presented has been before us in several cases of comparatively recent date, and in each instance it has been ruled against the position taken by the appellant. *Cramer v. Railroad Co.*, 153 Iowa, 103; *Winn v. Express Co.*, 149 Iowa, 259; *Betts v. Railroad Co.*, 150 Iowa, 252.

We are not inclined to recede from the position taken by us in those cases, and it is unnecessary here to reopen the field of discussion which has been so fully covered

in the decisions here cited. Following those precedents, it must be held that the matters so pleaded constitute no defense to the plaintiffs' claim. Some other matters have been treated in argument, but this opinion, already too voluminous, can not be extended for their discussion. It need only be said that in none do we find reason for modifying the conclusions hereinbefore announced.

V. The plaintiffs sought to have attorney's fees taxed in their favor under the provisions of the federal interstate commerce act as amended by the acts of Congress of June 29, 1906, and April 13, 1908, and they have appealed from the order overruling their demand to that effect. It is true that this enactment provides for the recovery of attorney's fees against a carrier in favor of a shipper in certain cases, but we think the case at bar does not come within its scope. The particular subject there being treated of is unlawful discrimination by the carrier to the injury of the shipper, and in our judgment it does not, by its terms or by necessary implication extend to or include actions to recover damages arising from the carrier's negligence. The ruling below was right, and the exception thereto must be overruled. The judgment will be affirmed on both appeals. Costs of this court will be taxed to the defendant except costs for fifty pages of printing which will be taxed to the plaintiffs.—*Affirmed* on both appeals.

6. SAME: taxation of attorney's fees.