E. H. EMERY & COMPANY, Appellant, v. CHICAGO, BURLING-
TON & QUINCY RAILROAD COMPANY et al., Appellee
(and seven other cases).

**TRIAL:** Findings by Court—Interstate Commerce.    The judgment
1    of the court in a court-tried action for the recovery of damages
against a terminal interstate carrier for the negligent handling
of fruit, involves a finding of non-negligence on the part of
the terminal carrier; and such finding, when fairly supported in
the evidence, is not reviewable on appeal.

**CARRIERS:** Terminal Carrier Reloading Shipment.    A terminal car-
2    rier who receives shipments from an initial carrier in *appar-
ently suitable* cars, and continues the shipments therein, is not
negligent because it did not reload the shipment into *more suit-
able* cars.    So held where fruit was received in meat cars and
continued therein to point of destination.

**APPEAL AND ERROR:** Unsustained Action.    Error in finding that
3    a shipper had failed to make claim for damages within the
time required by an interstate bill of lading is harmless when
the shipper wholly fails to establish any claim.

**CARRIERS:** Wrongful Refusal to Receive Shipment.    A consignee-
4    owner may not rightly refuse to receive from a terminal car-
rier a shipment damaged solely by a preceding carrier, and if
he does so refuse, and the shipment is urgently perishable, the
carrier may peremptorily sell at the best obtainable terms, and
account accordingly.

**JUDGMENT:** Not Necessary on Cash Tender.    No judgment is
5    necessary on an accepted unconditional cash tender.

**CARRIERS:** Expenses by Consignee in Making Inspection.    A car-
6    rier is not liable to a consignee-owner for expenses suffered in

traveling to a terminal point for the *sole purpose of inspecting the shipment, a fortiori* when the consignee-owner wrongfully refuses to receive the shipment.

CARRIERS: Joint Liability of Initial and Terminal Carrier. Initial and terminal carriers hold no such relation to each other on interstate shipments that the negligence of the initial carrier becomes the negligence of the terminal carrier.

APPEAL AND ERROR: Waiver of Erroneous Order. Plaintiff waives all right to complain of an order dismissing his petition, when the dismissal was under conditions under which he was given the right to file a new petition, which he did file, and to which the defendant immediately appeared.

APPEAL AND ERROR: Removal of Cause to Federal Court. The state appellate court will not review an order of the state district court transferring a cause to the Federal court.

REMOVAL OF CAUSES: Remedy for Retransfer. He who has his cause in the state court transferred to the Federal court, on the application of the defendant, must seek relief in the Federal court for retransfer to the state court.

ACTIONS: Dismissal and Nonsuit—Permission to File New Petition—Continuance and Not Termination of Suit. The court's entry of a dismissal of plaintiff's petition, with permission to file a new amended petition, which later petition defendant answered, will not be construed as a dismissal of the action, but as a continuance upon new pleadings permitted to be filed.

COSTS: Taxation—Taxed before Disposition of Case—Correction on Motion. Where costs should not have been taxed until the final disposition of the case, correction can be made on motion to retax the same.

*Appeal from Wapello District Court.*—SENECA CORNELL, Judge.

JANUARY 27, 1919.

SUPPLEMENTAL OPINION ON REHEARING JULY 10, 1919.

The necessary facts are stated in the opinion.—*Affirmed.*

*Chester W. Whitmore,* for appellant.

*McNett & McNett, W. D. Eaton, E. C. Eicher,* and *Brammer, Lehmann & Seevers,* for appellees.

STEVENS, J.—I. Separate petitions were filed by plaintiff against eight different railroad companies, in each of which the American Refrigerator Transit Company was joined as defendant. The defendants upon whom service of notice was had and who appeared and answered are as follows, to wit: The Chicago, Burlington & Quincy Railway Company, the Chicago, Milwaukee & St. Paul Railway Company, the Pennsylvania Railroad Company, the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and the Chicago, Rock Island & Pacific Railway Company. Original notice was served upon the Refrigerator Company in Linn County, and it appeared in each of the separate cases, and moved that the trial thereof be transferred from Wapello to Linn County, which motion was overruled; whereupon it also filed answer.

Plaintiff in its several petitions claimed damages on account of the alleged negligence of defendants in the transportation of peaches in carload lots from Clarksville, Arkansas, to various points of destination. All shipments originated with the St. Louis & Iron Mountain Railway Company, on which plaintiff was unable to obtain service of notice. The defendants named, except the Refrigerator Company, are delivering carriers.

The action against the Chicago, Burlington & Quincy Railway Company involved one car of peaches carried by it from Kansas City to Bladen, Nebraska; against the Chicago, Milwaukee & St. Paul Railway Company, six cars from Kansas City, four of which were delivered to plaintiff at Ottumwa, and the remaining two to consignees named at Chicago; against the Chicago, Milwaukee & St. Paul Railway Company, six cars from Kansas City, four of which

were delivered to plaintiff at Ottumwa, and the remaining two to consignees named at Chicago; against the Pennsylvania Railroad Company, nine cars, seven of which were delivered at New York City and two at Pittsburg; against the Chicago, Rock Island & Pacific Railway Company, one car to Ottumwa. Each of the several shipments were made under a uniform standard bill of lading, approved by the Interstate Commerce Commission, containing the following provision:

"Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable."

Each of the defendants in answer denied the allegations of plaintiff's petition that claims were filed within the time provided, or that the damages complained of occurred on its line of railway, or while the peaches were in its possession. By stipulation of the parties, a jury was waived, and the several cases consolidated for trial, and it was agreed that the evidence offered should, so far as applicable, be considered in each case.

The principal allegations of negligence relied upon by plaintiff were that a number of the shipments were made in meat cars, not properly constructed or equipped with necessary refrigeration or ventilation facilities, nor adapted to the transportation of fruit in warm weather; that all of the cars were inadequately supplied with ice, and not properly inspected and ventilated in transit. Evidence offered on behalf of all of the defendants tended to exonerate each of them from negligence in all of the respects charged.

Plaintiff claims to have purchased the entire yield of a certain peach orchard near Clarksville, Arkansas, and to have contracted with the Iron Mountain to furnish fruit refrigerator cars in which to ship the same. The railroad

company, however, furnished a large number of meat cars, which, as above stated, plaintiff claims are not so constructed as to permit the proper circulation of air through the car. Appellant states that same are not equipped with ventilators, and that the ice bunkers are without sufficient capacity, and so constructed as not to properly cool and preserve the fruit; whereas fruit cars have much larger icing capacity, together with suitable provision for circulation of the air through the car, and appropriate means of ventilation, and are altogether better adapted to the transportation of perishable goods. Plaintiff vigorously protested to the agent of the initial carrier and the defendant Refrigerator Company against the use of meat cars, and notified them in advance of shipment that, in case peaches were loaded therein, heavy claims for damages would be filed; but, being unable to procure a sufficient number of fruit cars, finally consented, under protest, to shipment's being made therein.

The evidence is undisputed that, at the time the peaches were loaded in the cars, the bunkers contained but little ice, and that wholly insufficient refrigeration was thereafter provided by the initial carrier, and that the peaches must have been in various stages of decay when received by defendants. Evidence was offered on behalf of each of the defendants, showing the amount of ice in the bunkers when the cars were received; also, the quantity placed therein by defendants and remaining at destination.

All of the carriers offered evidence showing that none of the cars were roughly handled, except one of the cars, which was carried to an eastern point; but it was not shown that the damages complained of were due to rough handling of the car.

The court, upon submission, took the several cases under advisement, and on January 6, 1917, filed a written opinion, holding that plaintiff had wholly failed to comply

with the provisions of the bill of lading requiring the filing of claims for damages, and that the several petitions would be dismissed. Later, and on June 16, 1917, formal judgment entry was filed in each separate case, in which the court found in favor of all of the defendants, except the Refrigerator Company, upon the merits.

The duty of initial and succeeding carriers to provide suitable cars and facilities for the transportation of perishable goods, and to properly inspect, refrigerate, and ventilate the cars in transit, is not controverted by counsel for appellees. By accepting and transporting the peaches in the cars received from the initial carrier, the defendants made the same their own, for the purpose of the shipment. *Blair & Jackson v. Wells-Fargo & Co.,* 155 Iowa 190; *Shea v. Chicago, R. I. & P. R. Co.,* 66 Minn. 102 (68 N. W. 608); *Lucas & Lewis v. Norfolk So. R. Co.,* 165 N. C. 264 (80 S. E. 1076); *Kime v. Southern R. Co.,* 160 N. C. 457 (76 S. E. 509).

In a decision upon the merits, the court must have found that the defendants were not negligent in the respects charged, and that the peaches were not damaged because of negligence on their part. If received in the condition indicated by plaintiff's testimony, it would have been manifestly impossible for defendants to have delivered them at destination in a sound and marketable condition. Decay, having commenced, must necessarily continue, to some extent at least, thereafter.

1. TRIAL: findings by court: interstate commerce.

The peaches were not inspected at the time the cars were delivered to defendants nor *en route,* nor is there direct evidence that the ventilators with which the fruit cars were equipped were opened. There was evidence that it would have been imprudent to open the doors of the meat cars, as to do so would have permitted the cooled air to es-

2. CARRIERS: terminal carrier reloading shipment.

cape, and raise the temperature of the car. The air in some of the cars was warm and foul when the doors were opened at destination, and the fruit in advanced stages of decay, so far, in some instances, as to be practically worthless. But whether the defendants were, in fact, negligent in any of the respects charged, and whether same was the proximate cause of the damage to the fruit, were questions of fact submitted to and passed upon by the trial court, and its finding has the force and effect of the verdict of a jury. *Pace v. Heinley*, 85 Iowa 733; *Blackledge & Blackledge v. Davis*, 129 Iowa 591; *Thistle Coal Co. v. Coal & Mining Co.*, 132 Iowa 592; *Sprecher v. Ensminger*, 167 Iowa 118.

Counsel for apppellant vigorously argues that the defendants are liable for such damages as may have resulted from the shipment of the peaches in meat cars over their lines; that they were bound to furnish suitable and properly equipped cars to insure reasonable protection to the fruit *en route;* and that, by continuing the shipment in meat cars, they adopted the same as their own, and, therefore, are liable for any damages resulting from the use thereof. While the duty rests upon the carrier to provide cars and other means reasonably proper and fit for the transportation of perishable goods, no court, so far as we are aware, has ever held that it is incumbent upon the carrier to have on hand, at junction points, refrigerator fruit cars properly cooled, ready to receive the contents of meat cars improperly used by an initial carrier. To so hold would impose a duty manifestly impossible of performance. The Carmack Amendment makes the initial carrier absolutely liable to the owner for injuries resulting from its own or a succeeding carrier's negligence. The cars when received, with one exception, were in good condition, with nothing to indicate that the shipment could not be continued safely to destination therein.

Counsel relies upon *Beard & Sons v. Illinois Cent. R. Co.*, 79 Iowa 518; *Blair & Jackson v. Wells-Fargo & Co.*, supra. The first of the above cases involved a shipment of butter in a box car, without refrigeration or means of preserving the same, and the latter, a shipment of horses in a car received by defendant in a broken and damaged condition, and manifestly unsuitable in which to continue the shipment of horses. Whether the defendants should have opened the doors of the meat cars or the ventilators, or whether due care was exercised in icing and handling the respective cars involved, were questions of fact necessarily involved in a determination of the cases upon the merits. The same may have been inferred from all the facts and circumstances. Direct evidence thereof was not required. It is not material that, as to some of the cars, a different conclusion might have been reached by a jury or by this court: the finding of the court below, having support in the evidence, is binding and conclusive upon us.

It is contended that the court improperly held that claims for damages were not filed, as required by the provision of the bill of lading. But the judgment of the court is not based upon this finding alone. The filing of a claim was made necessary only because of the terms of the bill of lading. The court not only found that claims were not filed, but also that plaintiff had failed to make out a case against any of the carriers on the merits. Any error in the finding of the court upon the question whether claims were filed was, therefore, wholly without prejudice.

3. APPEAL AND ERROR: unsustained action.

The car handled by the Chicago, Burlington & Quincy Railway Company was tendered to the consignee at Bladen, Nebraska, and refused by him; whereupon, a representative of plaintiff's went from Omaha to that point, inspected the peaches, and refused to remove the same from the car, or to have anything to do with them. The car arriv-

4. CARRIERS: wrongful refusal to receive shipment.

ed at Bladen, August 1, 1912; and about two days later, and after the abandonment thereof by the consignee and by plaintiff's representative, the defendant sold the peaches for $1 per basket. The fruit was so badly decayed when it arrived at destination that the agent of defendant thought the expense of further icing was not justified. The peaches were sold without notice to the shipper or to plaintiff, who now insists that same were converted by defendant, and demands judgment for the full value thereof.

Nebraska does not have a statute providing for the sale of perishable goods left in the possession of a carrier. The plaintiff wrongfully abandoned and refused to receive the fruit. It should have received and disposed thereof to the best advantage. Its condition was such that, if defendant realized anything from the sale thereof, prompt action was necessary. It was its duty to dispose of it for its own protection and the benefit of the owner. The transaction did not amount to the conversion of the fruit. *Parsons v. United States Exp. Co.*, 144 Iowa 745; *Georgia, F. & A. R. Co. v. Blish Milling Co.*, 241 U. S. 190 (60 L. Ed. 948); *Dudley v. Chicago, M. & St. P. R. Co.*, 58 W. Va. 604 (52 S. E. 718); 1 Moore on Carriers (2d Ed.) 259; *Silverman v. St. Louis, I. M. & S. R. Co.*, 51 La. Ann. 1785 (26 So. 447). What is here said is applicable to the car sold by the Pennsylvania Company.

The proceeds derived from the sale of the peaches was applied by the defendant to the payment of freight and refrigeration charges, and the balance, $41.01, defendant, in its answer, tendered to plaintiff, but without

5. JUDGMENT: not necessary on cash tender.

out interest or costs. On March 17, 1917, the defendant paid to the clerk of the district court of Wapello County $83.53, which the clerk's record recites is "in full payment of judgment, interest, and costs." No judgment was, however, entered against defendant. We gather from the record that $52.43

of the above amount represented principal and interest, and $31.10, costs.

After the payment to the clerk, plaintiff demanded judgment against the defendant for the amount tendered, together with interest and costs. The court declined to so order; and of this, plaintiff complains. The money having been paid into court, no necessity for process for collection existed, and the court did not commit error in declining to enter judgment. There is nothing in the record to indicate what other items of costs, if any, not included in the $31.10 were chargeable to defendant. The amount paid in excess of $31.10 was sufficient to satisfy the amount accrued, with interest to the date of payment.

Plaintiff also sought to recover $19.50 expended by its representative, who went from Omaha to inspect the peaches at Bladen. Authorities cited by counsel to sustain its claim to this item are not in point, but are cases in which expense was incurred in the preservation or treatment of damaged property. Plaintiff made no effort to preserve or dispose of the peaches, but abandoned them. The court properly refused to permit recovery on this item.

6. CARRIERS: expenses by consignee in making inspection.

II. Counsel for appellant contends, and cites numerous authorities which, it is claimed, sustain such contention, that the damages to the peaches were caused by the joint negligence of defendants and the initial carrier, and that each is liable for the full amount thereof. From its inception, the deterioration of the peaches doubtless continued, interrupted or retarded only, if at all, by the refrigeration provided by defendants. The alleged negligence of the initial carrier was separate and distinct from any act of defendants. Defendants were liable only for damages resulting from their own negligence. Such

7. CARRIERS: joint liability of initial and terminal carrier.

was our holding in *Emery & Co. v. Wabash R. Co.*, 183
Iowa 687. In that case, the court said:

"A somewhat different rule of liability obtains as between the shipper and the terminal carrier. The terminal
carrier is liable only for its own negligence. The shipper,
however, is entitled to the benefit of the presumption that
such terminal carrier received the goods in as good condition as they were in when received by the first carrier, and
that the damaged condition, if any, in which they were
delivered to the consignee, was the result of the terminal
carrier's negligence. On the other hand, the terminal carrier may show that the damage was not caused by its negligence, but by the negligence of a preceding carrier. The
burden of proof is upon it, in such case."

*Cedar Rapids Fuel Co. v. Illinois Cent. R. Co.*, 178
Iowa 878; *Knapp v. Minneapolis, St. P. & S. S. M. R. Co.*,
34 N. D. 466 (159 N. W. 81).

III. We come now to consider the case as made against
the American Refrigerator Transit Company. Upon motion
of defendant's counsel, based upon Section 3502 of the Code,
the court, at the time the petitions against
the defendant carriers were dismissed, also
dismissed plaintiff's petition against this defendant, without finding upon the merits.
After the submission, and before entry of judgment in the
several cases, plaintiff in each case filed an amendment to
his petition, asking an order for attachment against the
Refrigerator Company, upon the ground that it was a nonresident of the state. The court ordered a writ to issue, upon the filing of a bond, with sureties in a sum designated.
A writ of attachment was issued, and notice of garnishment
served upon each of the defendant carriers, as supposed
debtors of the Refrigerator Company. None of the garnishees answered; and after default thereof, counsel for
plaintiff in open court asked that a day be fixed therefor,

8. APPEAL AND
ERROR: waiver
of erroneous
order.

and the plaintiff be given an opportunity to present evidence in the attachment proceedings, and show cause why judgment should be entered against the defendant and garnishees. The request was denied. The court, however, at the time, and as a part of the judgment entry in each of the several cases, caused the following finding and order to be entered of record:

"Certain attachment proceedings independent of and auxiliary to this cause have been commenced by plaintiff. Plaintiff may, without further filing fee, if he sees fit, file a petition in said proceeding at least 20 days before the next term of this court, and defendant American Refrigerator Transit Company, without further notice, be held to appear and plead thereto before noon of the second day of the next term thereafter, as provided by law.

"As to the proceedings *in rem* based upon said writ of attachment and garnishment, the court in said renumbered cause still retains jurisdiction of same and of the defaulted garnishee, so far as the claims of plaintiff against said American Refrigerator Transit Company are concerned.

"Said attachment proceedings, being independent of these proceedings, shall be given a new docket number by the clerk of this court, and this suit should be and hereby is dismissed."

On July 24th following, plaintiff, in accordance with the permission granted, elected to and filed a new petition in each of the several cases, which was entitled "Substitute Auxiliary Petition in Attachment." The petition, however, contained a statement of plaintiff's cause of action, and a demand for judgment against the defendant Refrigerator Company and the garnishees for the amount claimed, with interest. Plaintiff thereupon appealed from the judgment of the court dismissing its petition against the Refrigerator Company, and now contends that the court had jurisdiction of the defendant in Wapello County, and that

it erred in dismissing it upon the ground that it was a non-resident of said county. It is the claim of counsel for appellant that defendant was the owner and operator of a line of cars in Wapello County, within the meaning of Section 3497 of the Code, and therefore was suable in said county; whereas counsel for appellee takes the position that plaintiff waived the error of the court, if any was committed by the dismissal of its petition, by subsequently filing a new petition.

The cause of action alleged in the new petition was based upon the same transaction as that alleged in the former petition, and could be assailed, if otherwise vulnerable thereto, by motion or demurrer, the same as the original petition. Had defendant appeared and answered, instead of filing a petition and bond for removal, and denied the allegations thereof, the cause would have been at issue, and subject to assignment and trial upon the merits. A judgment in favor of either party upon a verdict of the jury would as fully adjudicate plaintiff's claim as would a judgment on the merits upon the prior submission. The new petition was filed after the court had denied plaintiff's motion for a new trial, and notice of appeal had been served; the case, upon order of court, was given a new docket number. The character and effect of the pleading filed will not be determined by the name or title given by the pleader thereto. It took the place of the former petition, and whatever error, if any, was committed by the court in the dismissal thereof was waived by the filing and proceedings under the new petition. *Weaver v. Stacy,* 93 Iowa 683. And this is true whether the dismissal of plaintiff's former petition, together with judgment for costs, under the finding and order of the court, be treated as final or not.

IV. Defendant appeared before noon of the second day of the next term of court after the filing of plaintiff's new petition, and filed a petition and bond for removal of

the cause to the United States district
court. The court accepted the petition and
bond, and ordered the clerk to prepare a
certified transcript of the record and deliver it to the defendant or its attorneys. A transcript was taken and duly filed in the office of the clerk of the United States district court. Plaintiff appealed from the finding and order of the court transferring the case to the Federal court. If it appeared upon the face of the record, including the petition for removal, that the case was removable, then it was the duty of the state court to proceed no further with the case. *Iowa Cent. R. Co. v. Bacon,* 236 U. S. 305 (59 L. Ed. 591).

9. APPEAL AND
ERROR: removal
of cause to
Federal court.

The transfer of the case to the Federal court was not effected by the order of the state court, but by the filing of a petition sufficient under the laws of Congress for that purpose, together with the necessary bond. *New Orleans, M. & T. R. Co. v. Mississippi,* 102 U. S. 135 (26 L. Ed. 96); *Crehore v. Ohio & M. R. Co.,* 131 U. S. 240 (33 L. Ed. 144).

The only question the state court could determine was whether, admitting the facts stated in the petition to be true, the petitioner was entitled to have the cause transferred to the Federal court. *Burlington, C. R. & N. R. Co. v. Dunn,* 122 U. S. 632 (30 L. Ed. 1159); *Bacon v. Iowa Cent. R. Co.,* 157 Iowa 493; *Iowa Cent. R. Co. v. Bacon,* supra.

Plaintiff may, upon a motion filed in the United States court, have the case remanded, if the petition does not state a cause for removal, or it may plead to the jurisdiction of the court, and have a hearing upon the issues of fact presented. *Bradshaw v. Bowden,* 226 Fed. 323; *Morris v. Gilmer,* 129 U. S. 315 (32 L. Ed. 690). If the United States district court finds that the cause was not removable, it will, in the interest of justice, remand the same to the

10. REMOVAL OF
CAUSES:
remedy for
retransfer.

state court. The Supreme Court of the United States, in *Chesapeake & O. R. Co. v. McCabe,* 213 U. S. 207 (53 L. Ed. 765), said:

"In order to prevent unseemly conflict of jurisdiction, it would seem that the state court in such cases should withhold its further exercise of jurisdiction until the decision of the circuit court of the United States is reviewed in this court. If the Federal jurisdiction is not sustained, the case will be remanded, with instructions that it be sent back to the state court, as if no removal had been had."

The finding of the Federal court upon the question whether the cause was removable is final, and if jurisdiction is assumed thereof, is binding upon the state court until reversed. While it is true that, if the petition for removal failed to state a cause therefor, the state court did not surrender its jurisdiction to try the case, yet, so long as the cause remains in the Federal court, the state court is powerless to give effect to a judgment rendered therein. If the Federal court remands the case to the state court, it will there be disposed of, the same as though no attempt at removal had been made. We therefore refrain from passing upon any of the questions presented upon plaintiff's appeal from the order of the court below, transferring the case to the Federal court for trial.

Many other interesting and perplexing questions are discussed by counsel in their respective briefs and arguments, which are disposed of by what has been said in this opinion, and need not be given separate consideration.

It follows that the judgment of the court below is— *Affirmed.*

LADD, C. J., GAYNOR and SALINGER, JJ., concur.

### SUPPLEMENTAL OPINION.

PER CURIAM.—A careful consideration of the questions submitted on petition for rehearing has convinced us that

the action of the court, in the former entry of dismissal of
the petition, and in permitting the plaintiff
to file an amended and substituted petition
against the American Refrigerator Transit
Company was not intended, and should not
be construed, as the termination of the pro-
ceedings on the petition originally filed.

11. ACTIONS:
dismissal and
nonsuit: per-
mission to
file new peti-
tion: contin-
uance and
not termina-
tion of suit.

Surely, the court, if the original petition
were dismissed and costs taxed, could not well reinstate the
case, for that it must have lost jurisdiction, and the par-
ties would have been out of court. The parties, however,
construed the entry as merely permitting new pleadings to
be filed, and an order which the court might properly make.
The plaintiff, in filing the new petition, and the defendants,
in appearing and answering, apparently conceded the con-
tinuing jurisdiction of the court over the parties and sub-
ject-matter; and we are of the opinion that the court's en-
try should not be construed as a dismissal of the proceed-
ings on the original petition, but as the continuance of the
cause upon new pleadings, permitted to be filed. This is the
only reasonable construction of the court's action, and is
the construction which we think should be given to the
record.

Some complaint is made concerning the taxation of
costs. We discover no motion praying for a correction in
this respect. Of course, the portion of the costs properly
taxable as between the plaintiff and the
American Refrigerator Transit Company
should not have been taxed until the final
disposition of the case, and this correction
may be made on motion to retax the costs.

12. COSTS: taxa-
tion: taxed
before dispo-
sition of case:
correction on
motion.

With these additional suggestions, the petition for rehear-
ing is overruled.