BLACKLEDGE & BLACKLEDGE, Appellants, v. T. J. DAVIS, Appellee.

Tenancy in common: SALE OF CO-TENANT'S INTEREST: EVIDENCE OF
1   AUTHORITY. On a review of the evidence it is held that one of several tenants in common was not shown to have authority from his co-tenant to make an enforceable contract for the sale of the co-tenant's interest in the property.

Finding of facts by court: EFFECT. Where a law action by agree-
2   ment is tried by the court, its findings of fact have the force of a verdict of a jury.

Brokerage: RECOVERY OF COMMISSION: BURDEN OF PROOF. In a com-
3   mission action for the sale of land under a contract at a fixed price or at any lower price consented to by the owner,

the broker has the burden of showing that he produced a purchaser with whom an agreement for sale or exchange was concluded, and that such purchaser was able, ready and willing to carry out the contract, which includes ownership of the title or authority to convey it, although he may have been financially able to respond in damages on failure of title.

*Appeal from Davis District Court.*— HON. 'C. W. VER-MILLION, Judge.

FRIDAY, FEBRUARY 9, 1906.

ACTION to recover commissions alleged to have been earned by plaintiffs under an agreement to make or procure a sale of land owned by the defendant. A jury having been waived, the case was tried to the court. There was judg-ment for defendant, and plaintiffs appeal.— *Affirmed.*

*Wherry & Walker, E. S. McCord,* and *Payne & Sowers,* for appellants.

*A. C. Steck* and *H. C. Taylor,* for appellee.

WEAVER, J.— The agreement declared upon is in writing, and by its terms defendant promised that, in the event plaintiff firm " sells or causes to be sold the farms now listed·by me, one thousand four hundred acres, I will then pay them the sum of .$2,000 for selling same at the price agreed upon, which is $75,000, or any other price below that consented to by me." It is the claim of plaintiffs that they brought defendant into communication with a customer with whom a verbal agreement was reached by which the defendant undertook to convey to said customer the farm lands mentioned in the commission contract, in consideration of the conveyance to him by said customer of various lots and tracts of land in the city of Ottumwa to the agreed value of $35,000 and the payment of $20,000 in cash and $20,000 on five years' time, with interest thereon at six per cent. It is further alleged that, the terms hav-

ing been agreed upon, the matter of reducing them to writing was postponed until the following morning, at which time, without any fault or failure upon the part of plaintiffs or of the customer procured by them, the defendant refused to perform his agreement or to consummate the sale or exchange of property. The defendant admits making the commission contract, but denies the other allegations of the petition.

The evidence tends to show, without serious controversy, that plaintiffs approached Mr. Manning, of Ottumwa, for the purpose of interesting him in the purchase of defendant's land, and that a meeting between defendant and Mr. Manning was thus brought about. Negotiations continued during the day, with the result that a list of the lots and tracts of land to be conveyed by Manning to the defendant in part consideration for the property of the latter was made out and prices agreed upon. It appears, however, that included in the list above mentioned were one hundred South Ottumwa lots, which were to be selected from a larger number, and defendant expressed the desire to visit and inspect this property again, and to postpone the conclusion of the contract for that purpose until the next morning, and to have his own counsel, not then present, go over the matter with them and draw the necessary papers. According to Mr. Manning's statement as a witness, the negotiations on that day concluded in the following manner: "Davis said: 'Well, I guess this is a trade. I would like to have had Judge Steck here to have gone over the matter with us; but if you are willing to call it a trade, I am.' He said: 'I would like, however, to go and examine the South Ottumwa lots. I haven't the lay of those lots exactly in my mind, and if you will go with me in the morning to look at those lots, I would like to have you do it.' I said: 'Certainly, I will.' Mr. Blackledge then said that he always liked to close these things up when the parties agreed. Mr. Davis said it was too late that night, and he wanted Mr. Steck

to draw the writing. Blackledge got up and said, 'Well, do I understand you this is a trade?' Davis said, 'Well, my word is good, and I guess Mr. Manning's word is good.' I said, 'Well, Jeff, if you do your part, I will be there with mine.' We then said we would meet the next morning at Steck's office and prepare a written contract."

According to the defendant's version, his statement at this time was to the effect that if he found the property to be what he thought it was he would trade; that he would take the list and submit it to his attorney, and if found satisfactory by him they would go over in the morning and look at the one hundred lots of south side property. On the following morning defendant went to the office of his attorney, Judge Steck, and claims to have then ascertained that the location of the lots on the south side, instead of being contiguous, or nearly so, as represented by Manning, were scattered over the entire addition, and that Manning was not in fact the owner of more than a fractional interest in them. When Manning and the plaintiffs arrived at Steck's office, and the defendant had made known his objections to concluding the trade on the basis of the list made on the preceding day, negotiations were then reopened looking to the substitution of other property in the trade in the place of the south side lots. Manning questioned whether the price of $75,000 put upon defendant's land was not too high, and later in the day took the train and went out to examine it, or some part of it. No agreement was reached, and the efforts of Manning and the defendant, by his counsel, to get together upon some proposition, were continued from time to time down to near the date of the trial of this case in the court below. When the parties failed to complete the contract as contemplated, on the morning after the first meeting above referred to, there was no assertion or claim put forward by the plaintiffs, so far as the record discloses, that an agreement of sale or exchange had in fact already been made, or that their commission had then been earned.

Neither does it appear that Manning then supposed or contended that he had any definite and settled agreement with the defendant, which the latter ought to carry out; but, on the contrary, both parties seem to have proceeded on the theory that the matter had not been carried beyond the stage of negotiation, which was thereafter continued for a considerable period.

It is conceded that the South Ottumwa lots were owned by Manning in common with a brother and sister. There is some evidence of the knowledge of the brother of the proposed disposition of the property, but none so far as the sister is concerned. Manning testifies in a general way to his control and management of the property, that it was a part of the estate left by their father, after whose death the three children had consented to hold the title in common, to enable the witness to sell it and avoid handling separate tracts. He says:

1. TENANCY IN COMMON: sale of cotenant's interest: evidence of authority.

The property owned by my sister Anna and brother Will and myself I have had the disposition, control, and management of for them. I have always consulted with them when I made a sale of any kind, but it has always been approved by them, and I was managing their property for them. I consulted with my brother as to the making of this trade. We went over to the farm with Mr. Davis, but my sister was in Grinnell, and I hadn't communicated with her. It was agreed between my brother, my sister, and myself, at the division of the estate of my father, when we became the owners of this property, that I should make all the selections for my sister, and that at any time we could change the lots and suburban property for farm land we would do so.

The substance of this and other testimony upon this point is to the effect that the witness was in the active control and oversight of the land and that his sister was in the habit of accepting and approving his acts or advice with reference to such property. It appears, however, that upon

all previous occasions he had consulted with his brother and sister and had their approval as to sales of the common property; but in the present instance he did not consult the latter. We think it quite clear that no such authority is here shown as would make the contract of the witness specifically enforceable against his sister. Neither the brother nor sister testified as a witness in the case.

Upon the case thus made there is nothing calling for a reversal of the judgment appealed from. The findings and judgment of the trial court upon the facts are to be treated by us as having the force and effect of a ver-

2. FINDING OF FACTS BY COURT: effect.

dict of a jury, and we cannot overrule them, if there be any evidence on which they may reasonably or fairly be based. That there is evidence which, if believed by the trial court, does support its conclusions, cannot be denied.

Assuming, for the sake of argument, that plaintiffs could have earned their commission by producing a customer ready, able, and willing to take the defendant's property on the authorized terms, there is no sufficient

3. BROKERAGE: recovery of commission: burden of proof.

showing that this was done. The authorized price was $75,000 in money. To earn a commission under the alternative clause of the agency contract, "or any other price below that consented to by me," the burden was upon plaintiffs, according to their own theory, to show affirmatively that they did in fact produce a person with whom defendant reached an agreement of sale or exchange in which the minds of the parties had met as to the property which was the subject of such sale or exchange and the terms and price on which the same was to be consummated, and that the customer was ready, able, and willing then and there to carry out such agreement.

As applied to the alleged agreement with Manning, it was incumbent upon plaintiff to show, among other things, that Manning had good title to the South Ottumwa lots, or

was duly authorized by the holder of such title to dispose of them. In this respect, as we have already intimated, we think the finding of the trial court may be upheld. The fact that Manning was financially able to respond in damages for any failure of title to the property to be conveyed by him does not cure this objection. Each party to the proposed exchange was entitled to receive a good and sufficient title to the very property which the other party agreed to convey to him, and inability on part of either to make good his agreement relieves the other from obligation to perform. *Snyder v. Fidler,* 125 Iowa, 378.

Other questions have been argued by counsel; but, as we find no reason for overruling the finding of the court below upon the one already considered, and this is decisive of the appeal, we shall not attempt to pass upon them.

The judgment of the district court is *affirmed.*