JAMES G. MILLER, Appellee, v. ROBT. P. J. GEMRICHER, Appellant.

**MALICIOUS PROSECUTION:** Probable Cause per se. Evidence held to conclusively show the existence of probable cause on the part of a prosecutor in causing an arrest for willful trespass on property held by cotenants.

  STEVENS and FAVILLE, JJ., dissent.

*Appeal from Polk District Court.*—THOS. J. GUTHRIE, Judge.

JUNE 25, 1921.

DAMAGE action for malicious prosecution. Verdict for plaintiff. Facts appear in the opinion.—*Reversed.*

*E. S. Schuetz* and *Miller, Parker, Riley & Stewart,* for appellant.

*McHenry & Bowers,* for appellee.

PER CURIAM.—This action is brought by appellee, to recover damages for malicious prosecution, growing out of the arrest of appellee, caused by appellant's charging him with willful and malicious trespass upon a lot in Polk City, Iowa, in which appellant owned an undivided two-thirds interest, and one Stephen Wacker owned the other one third, through conveyance from the mother of Gemricher; Peter Gemricher, father of appellant, having died and left the property to his wife and son.

On March 7, 1918, Gemricher filed an information with a justice of the peace at Polk City, Iowa, accusing appellant of the crime of trespassing upon said Lot 9. A warrant was issued under the information, and appellee was arrested and taken before a justice of the peace, where he gave bonds for his appearance at a preliminary hearing had within a few days, when appellee waived examination and was bound over to the grand jury, which subsequently ignored the complaint.

Appellee alleges that the charge of malicious trespass was made by defendant without probable cause, for the purpose of humiliating and embarrassing him and causing him expense and trouble; that appellee was put to expense, and sustained damage to his reputation and business, and suffered humiliation and embarrassment on account of said arrest, and sustained actual damages in the sum of $1,500; that the filing of said information and the prosecution of the plaintiff thereunder were done with malice. In addition to actual damages, appellee demanded exemplary damages in the amount of $500.

Defendant admits that he signed and filed in justice court the information accusing the plaintiff of the crime of trespass; that the warrant was issued under which appellee was arrested; that preliminary examination was waived; and that appellee was bound over to the grand jury, and furnished bond for his appearance. Defendant denies that the charge was made without probable cause and maliciously; denies that information was filed for the purpose of embarrassing or humiliating the plaintiff; alleges that appellee was, at the time the information was filed, and still is, a trespasser upon said Lot 9, an undivided two thirds of which is owned by appellant, and that appellee was not authorized by defendant to enter upon said premises; and avers that information was filed after appellee had been notified of the rights and interest of appellant in the lot, and after appellee had persisted and continued to trespass upon said property, and that said information was filed upon advice of counsel.

At the close of all the evidence, appellant moved the court to direct a verdict in his favor, upon the grounds:

"(1) That plaintiff had not shown that the filing of the information and the arrest of which he complained, were without probable cause.

"(2) That the evidence affirmatively shows the existence of probable cause.

"(3) That the evidence fails to show that the filing of said information and arrest was malicious.

"(4) That the evidence affirmatively shows that the prosecution was not malicious; that it was privileged, in that it resulted from and was based upon the advice of counsel.

"(5) That the pretended lease under which the plaintiff

claims to have taken possession and occupied the premises in question is void, in that it purports to demise to the plaintiff the exclusive use of a certain portion of the lot in question; whereas the lessor in said pretended lease, Stephen Wacker, had no power to make such grant, and the attempt at granting the same by writing or verbal lease is wholly void.

"(6) That the evidence affirmatively shows that the plaintiff was a trespasser upon said premises at the time of the filing of such information and at the time of his arrest."

The motion was overruled, and the case submitted to the jury. Proper exceptions were taken. Verdict was returned in favor of appellee in the sum of $750, and judgment entered thereon. Appellant moved to set aside the judgment and verdict, and for a new trial, based upon several grounds. The court sustained appellant's motion to set aside the verdict and for a new trial, unless appellee should file remittitur for an amount above $350,—to which appellee excepted. Thereafter, appellee filed his remittitur in an amount in excess of $350, for which amount judgment stands against the defendant.

It appears without conflict in the evidence that, at and prior to the time of the alleged trespass by appellee, the appellant was and still is the owner of an undivided two thirds of said Lot 9 in Block 7 in the town of Polk City, and that, at the same time, Stephen Wacker, half brother of appellant, was the owner of an undivided one-third interest in said lot, which had been conveyed to him, prior to the alleged trespass, by Anna Gemricher, mother of said Wacker and of appellant. About February 28, 1918, appellee moved onto this lot a chicken house, and dug and leveled off the ground on which the chicken house was located, and put some blocks under the building. He claimed to have been acting under a verbal lease with Stephen Wacker. On March 2d, Gemricher had a conversation with Miller (appellee), in which he informed Miller that he was the owner of an undivided two-thirds interest in the lot, and told Miller that he did not want him to occupy the property, and informed him that, if he would look the matter up, he would find that he had rights there. Miller does not and never has questioned Gemricher's title. Instead of following Gemricher's request to investigate his (Gemricher's) title, Miller continued

to occupy the lot with his chicken house, and obtained from Wacker, on March 4, 1918, a written lease, wherein Wacker, without any reference to defendant's title and interest in said lot, pretended to lease the whole lot to plaintiff; and the plaintiff proceeded and continued to trespass on the premises by digging post holes and setting posts, and built a fence on said lot, and put his chickens on the lot. About March 4th or 5th, Gemricher consulted E. S. Schuetz, a lawyer of Des Moines, of experience and good standing, and laid the situation in respect to plaintiff's conduct in occupying the lot fully before Mr. Schuetz, and was advised by Mr. Schuetz to confer with Miller again and make another request of him to cease to trespass on the lot, and to give him an opportunity to remove his buildings and property from the lot and cease trespassing thereon, and, in the event that Miller did not cease to trespass on the lot, then to go before a magistrate and sign and make an oath to a written information which Mr. Schuetz prepared and furnished to him, and file said information with the magistrate, charging the plaintiff with willful trespass. After being so advised, Gemricher returned to Polk City, bearing with him said information, unsigned and unsworn to; and, on the 5th or 6th of March, Gemricher sought Miller and had a second conversation with him, in which Gemricher again told Miller that he was a part owner of the lot, and insisted that Miller remove therefrom. Miller made no move to get off, but made further improvements upon the lot. The evidence does not disclose feeling or anger in this conversation on the part of Gemricher. In this conversation, Miller charged Gemricher with "having it in for him," and complained that Gemricher had testified against him in a lawsuit in which Miller was a party, some time before. Miller admits that he was "sore" at Gemricher on account of the testimony he had given at the trial between Miller and one McClellan. Following the second conversation, on the 6th of March, and upon appellee's continuing to trespass on the lot, on March 7th the information prepared by Mr. Schuetz was signed and sworn to and filed by Gemricher, and the arrest of Miller occurred on the same day.

The instructions of the court are not attacked, except as an assignment lodged against Instruction 4 embodies the same

thought as the assignment of error in overruling the motion to direct a verdict.

The major question presented in the motion to direct a verdict and the motion to set aside the verdict is whether the record discloses positively and without dispute the existence of probable cause for the act of Gemricher (appellant) in filing the information charging Miller with willful trespass, and causing his arrest.

It is the law, undoubtedly, that the lease executed by Wacker to Miller invested Miller with no legal right upon the lot, as against Gemricher, who, it is admitted, owned a two-thirds interest in the lot; and Gemricher was not required to recognize such lease as giving to Miller any right whatsoever upon the lot (38 Cyc. 101, 104, 108; *Blackledge v. Davis,* 129 Iowa 591); and likewise, Miller acquired no rights under the alleged oral lease with Wacker, as against Gemricher.

It appears from the evidence, without conflict, that Gemricher told Miller, on March 2d, of his interest in the lot, and that, notwithstanding such notice, two days thereafter, on March 4th, Miller obtained a written lease from Wacker. Of course, Miller had constructive notice all the time, from the records of Polk County, that Gemricher owned two thirds of the lot. In addition to such constructive notice, Miller had actual notice and knowledge, given to him in two conversations with Gemricher before the execution of the written lease, of Gemricher's ownership in the lot. In the conversation of March 2d, Miller was expressly informed by Gemricher of Gemricher's title and interest in the lot, and of his objections to Miller's occupancy of the lot. Miller admits that, after knowing of Gemricher's ownership in the lot, and of Gemricher's expressed desire for him to cease trespassing on the lot, he continued his occupancy, digging and building on the lot. Miller himself testifies:

"This chicken house   *   *   *   I moved it onto this lot on the 28th day of February, 1918.   *   *   *   I took a spade and leveled off the ground and put some blocks under the building. On Monday, March 4th, I built a fence out of boards, inclosing a space about 6 by 12 or 14 feet, and I put my chickens in there, the evening of March 4th. On the evening of the 2d of March, I had a conversation with Mr. Gemricher about the matter, and

I understood perfectly well that he was claiming to have owner-ship and property rights in the ground. I had not consulted him nor obtained his consent to move that building on there, nor to occupy the ground. In the conversation with Mr. Gem-richer which took place on the 2d of March, he asked me to move off. * * * He did not get mad about it, or say he was mad or anything of that kind. He didn't make any threats. He simply informed me that he had rights there, and he did not want me to occupy that property. I talked with Gemricher again about the same subject probably Wednesday, the day be-fore he had me arrested. In the meantime, between the first and second conversations I had with Mr. Gemricher, I went ahead and built this corral and put my chickens in it. That was on the 4th day of March. Mr. Gemricher, in the conversation we had on the 5th or 6th of March, again insisted that he was part owner of the ground; and from my general knowledge I knew that he was an heir of a part of the Peter Gemricher estate. In this conversation, Mr. Gemricher was still insisting that I had to get off the lot. I understood that clearly. I made no move to get off. I built the wire corral on the 6th day of July. That was after I started this suit. As near as I can remember, the last conversation I had with Gemricher before the information was filed was on the 5th or 6th of March, and at that time I was going ahead and building my corral, and fenced in enough to give my chickens some place to run.''

According to his own testimony, Miller was a willful tres-passer when the information was filed. Miller was a trespasser when he first went upon the premises in February, but perhaps then he was not a willful trespasser. He claims to have first gone onto the premises under a verbal lease with Wacker. But soon thereafter, he had a conversation with Gemricher, and was informed that Gemricher claimed an interest in the lot; and in another conversation, Gemricher informed him specifically that he was the owner of a two-thirds interest in the lot, and that he wanted him to vacate the lot. So that, under this situation, it would seem that Miller, in continuing to trespass on the prem-ises, and refusing to go off, after full knowledge of Gemricher's two-thirds ownership in the lot, and that Gemricher wanted him to vacate the lot, became, and was at the time of the filing of

the information on March 7th, a willful trespasser upon the lot in question. It occurs to us that Miller's act in persistently continuing to occupy the lot and to dig in the ground and make improvements thereon, after he had notice and actual knowledge, repeatedly, of Gemricher's ownership in the lot and Gemricher's desire for him to cease to trespass thereon, would make out willful trespass.

If the record in this case clearly shows, and without appreciable dispute (and we think it does), that Miller was a willful trespasser, as defined by Code Section 4829, upon the lot, then it follows that the filing of the information by Gemricher was not without probable cause, but, in fact, was with probable cause.

We have carefully examined the record, and we come to the conclusion that the evidence fails to show that the filing of the information and the causing of the arrest of plaintiff were without probable cause; but that it appears from the evidence without dispute and conclusively and, therefore, as a matter of law, that the prosecution of plaintiff by defendant was with probable cause.

We need not proceed further. The motion to direct verdict should have been sustained, and overruling it was error. On account of such error, the case is reversed.—*Reversed.*

EVANS, C. J., WEAVER, PRESTON, ARTHUR, and DE GRAFF, JJ., concur.

STEVENS and FAVILLE, JJ., dissent.