E. S. Windell, Appellant, v. Mrs. C. L. Steinhoff, Appellee.

No. 40674.

February 10, 1931.

*Roberts & Roberts,* for appellant.

*Thomas J. Bray,* for appellee.

Grimm, J.—On the 7th day of March, 1928, the defendant, Mrs. Steinhoff, entered into a written contract with one William Benson, by the terms of which Mrs. Steinhoff agreed to sell to Benson a certain two-story brick building located in Eddyville, Iowa, for the sum of $8,000. The purchaser was to execute a note for $3,000, and on May 4, 1928, another note for $5,000 was to be delivered, secured by a mortgage on the property, this latter note to be due in three years. One George F. Taylor, a realtor, brought this purchaser, Benson, to the home of Mrs. Steinhoff. Taylor represented himself as the brother of a banker in Oskaloosa and the cousin of the mayor of Oskaloosa. After some conversation with Mrs. Steinhoff, Benson, who had remained in the automobile outside, was brought in. Negotiations were had, whch finally led to the written contract sketched above.

Benson had represented that he wanted to buy the property

as a place in which his son-in-law, then in Illinois, could engage in business. Mrs. Steinhoff and Taylor talked for some little time about what commission should be paid, and $800 was finally agreed upon. Just as soon as the contract was signed, Taylor demanded his commission. Mrs. Steinhoff gave him a check for $216, which was practically all of the money she had, and two promissory notes, each for $266, at 8 per cent interest from date, payable semiannually. The first note fell due April 15, 1928, and the other, May 10, 1928.

On March 9, 1928, the plaintiff, Windell, purchased said notes from Taylor, claiming to have exchanged therefor a certificate of deposit for $400 and $75 in cash. Taylor first presented these notes to plaintiff on the evening of March 8th, at plaintiff's house. The transaction was not closed that evening. On the following morning, about 9 o'clock, Taylor again called at plaintiff's house, at which time the plaintiff informed Taylor that he would buy the notes if he could satisfy himself that they were good.

It seems that at that time there were no negotiations as to the price at which the notes would be sold. Taylor and the plaintiff drove to Eddyville, where Mrs. Steinhoff lived, for the purpose of ascertaining whether the notes were good. The plaintiff went to the bank in Eddyville and made inquiry there. Afterwards, Taylor and the plaintiff went to Ottumwa, for consultation with plaintiff's attorney, who, in turn, investigated the financial standing of Mrs. Steinhoff. After this was all done, Taylor and the plaintiff went to plaintiff's house in Oskaloosa, arriving there about 2 o'clock in the afternoon, and it was then that the details of the purchase and sale of these notes were concluded.

The plaintiff claims that he gave Taylor a certificate of deposit on a bank in New Sharon for $400, and $75 in cash. While these negotiations were going on between Taylor and the plaintiff, it appears that plaintiff ascertained from Taylor that a certain contract which Taylor possessed was used by Taylor as a part of the consideration to Mrs. Steinhoff for Eddyville real estate.

It appears that Taylor had, shortly before the 9th of March, 1928, endeavored to sell this same contract to the plaintiff, but he refused to purchase it. On the morning after the contract with Benson was made, Mrs. Steinhoff went to the same bank at Eddyville, and conferred with her banker about the transaction. An

investigation made by the banker developed that Benson, who was held out as a property owner, had no property at all.

On April 4, 1928, the plaintiff wrote the defendant, advising her of his ownership of the note which fell due first, and that it would be due April 15, 1928. On April 9, 1928, Mrs. Steinhoff served a notice of rescission of the contract upon both Taylor and Benson; and on April 19, 1928, a notice of rescission was served upon the plaintiff, Windell.

It clearly appears that the plaintiff, Windell, had known Taylor for many years. He also had known Benson for many years. Windell, while he had been a farmer, at that time and for some time prior thereto had been collecting, lending money, and "shaving notes." This appeared on his printed stationery.

The case was tried to the court, without a jury. The court found for the defendant.

I. It is conceded by appellant that the testimony of the defendant conclusively showed that George F. Taylor, the payee of the notes involved in this action, with the assistance of one William Benson, procured said notes from the defendant by fraud, and that they gave the defendant no consideration therefor.

The controlling question in this case is whether plaintiff was a good-faith purchaser of the notes in question. It is not contended that Windell was a party to the fraud upon the defendant, Steinhoff. The plaintiff testified positively that he had no knowledge of any frailties in the notes at the time he purchased the same.

Section 9512 of the Code of 1927 defines what constitutes a holder in due course. Section 9516 of the Code of 1927 provides as follows:

"*What constitutes notice of defect.* To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, *or knowledge of such facts that his action in taking the instrument amounted to bad faith.*" (Writer's italics.)

We have, then, for consideration the question whether plaintiff in this case had "knowledge of such facts that his action in taking the instrument amounted to bad faith."

The case having been tried to the court without a jury, the finding of the court has the effect of a verdict by a jury, and we are here confronted only with the question whether there was sufficient evidence in the record to warrant a finding by a jury or a finding by the court that the action of the plaintiff in taking the instrument amounted to bad faith.

That the finding of a trial court in an action at law will not be disturbed if there is substantial evidence in the record to support it, needs no citation of authority, but see *Carr v. King & Tomlinson*, 184 Iowa 734; *Blackledge v. Davis*, 129 Iowa 591; *Sprecher v. Ensminger*, 167 Iowa 118; *Wilkins v. Howell*, 194 Iowa 654; *Main v. Brown*, 202 Iowa 924; *Griffith v. Arnold & Rasmussen*, 204 Iowa 1216.

There having been fraud in the inception of the notes, the burden is on the plaintiff in this case. See *Hess v. Iowa Bankers Mtg. Co.*, 198 Iowa 1365, and cases cited. See, also, *Conover v. Hasselman*, 199 Iowa 661, and cases cited.

There is no proof in the record of actual notice to the plaintiff of the infirmities of the notes. Did he have ''knowledge of such facts that his action in taking the instrument amounted to bad faith?'' That is the fact question which was presented to and was determined by the trial court.

The amount of the consideration paid may become important in determining whether the holder is a bona-fide purchaser. *Lay v. Wissman*, 36 Iowa 305. There are in this record many circumstances which, when each is taken alone, may not seem important, but, when all are taken together, support the finding of the court that the plaintiff took the note in bad faith.

We will not here quote nor comment at length on the evidence, but will refer only to a part thereof, by way of illustration. As a mere recitation of facts in the case, it may be noted that the contract which Taylor exchanged as part consideration to Mrs. Steinhoff for her real estate had been offered to the plaintiff, and he had refused to purchase it. He was more or less familiar with it. This in itself was not conclusive in character, because, as counsel for appellant urged, he was a ''note shaver,'' and not engaged in the business of buying contracts. He knew, before he purchased these notes, that the Taylor contract was used in Taylor's negotiations with Mrs. Steinhoff.

It very clearly appears that the plaintiff made a diligent

investigation to ascertain as to the *financial responsibility* of Mrs. Steinhoff, but it nowhere appears that he made any effort to avail himself of a very excellent opportunity to inquire of Mrs. Steinhoff, who lived near the bank in Eddyville, where he made his inquiry in reference to her financial responsibility, whether the defendant had any objection to the notes. In fact, the record tends to show that Mrs. Steinhoff was in the bank at the time the plaintiff was making his inquiry.

The plaintiff frankly states, on cross-examination, that he made no effort to see Mrs. Steinhoff; that he "had no business with her." It quite satisfactorily appears that he was only investigating as to her financial worth, and did not seem at all concerned as to whether she had objections to the transaction whereby Benson, with no financial standing, agreed to purchase from Mrs. Steinhoff $8,000 of real estate, and out of which transaction, as a commission, these notes grew. The character of Taylor's business and his reputation were known to plaintiff. He had sufficient knowledge concerning Taylor and his reputation to at least suggest an investigation in reference to his transactions before purchasing paper from Taylor, growing out of Taylor's transactions with other parties in regard to the purchase and sale of real estate.

It was significant that short-term notes, made by a party abundantly financially able to pay them when due, should have been discounted at such a heavy rate of discount, without any showing whatever on the part of Taylor of any special reason for disposing of the notes. This court has said:

"The amount of the consideration paid may become important in determining whether the holder is a bona-fide indorsee." *Lay v. Wissman,* 36 Iowa 305.

The total amount of the notes in this case was about $532. They ran for an average period of about 50 days. The discount was $57.

We think the record contains abundant evidence to warrant the submission of the question to a jury. This grows out of a combination of circumstances, among which are:

Plaintiff's acquaintance with and knowledge of Taylor's methods of doing business and his reputation in relation thereto.

The manner in which the plaintiff set about to investigate

the defendant's financial worth, and his apparent avoidance of his abundant opportunity readily at hand to investigate as to fraud or lack of fraud in the Benson contract, upon which the notes he was about to buy, and subsequently bought, were based.

The manner and circumstances under which the notes were discounted, and all the other facts and circumstances in the case.

We do not consider, and make no pronouncement concerning, what we might have found if the cause were before us for trial *de novo*. We are only concerned to find whether there was sufficient evidence to warrant a submission of the question to a jury.

A more detailed discussion of the evidence would serve no good purpose for either bench or bar. All the errors properly presented by the appellant under the rules of this court have been carefully considered, and found to be without merit. It follows that the case must be, and is,—*Affirmed*.

FAVILLE, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.